Argued October 21, reversed November 12, 1953

WHELPLEY *v.* FRYE, Adm'x
263 P. 2d 295

*Duane Vergeer* argued the cause for appellant. On the brief were Vergeer & Samuels, and Charles S. Crookham, all of Portland.

*Warren A. McMinimee,* of Tillamook, argued the cause for respondent. With him on the brief were Schwenn & Brink, of Hillsboro.

Before LATOURETTE, Chief Justice, and WARNER, BRAND and TOOZE, Justices.

TOOZE, J.

This is an action for damages for personal injuries allegedly caused by the negligent operation of a motor vehicle, brought by Mark W. Whelpley, as plaintiff, against Ida E. Frye, as administratrix of the estate of Gerald Frye, deceased, as defendant. A general verdict in favor of plaintiff in the sum of $5,516 was returned by the jury, and judgment against defendant was entered accordingly. Defendant appeals.

The cause of action involved in this litigation arose out of a collision between an automobile driven by plaintiff and an automobile operated by defendant's decedent. At the time of the accident, plaintiff was accompanied by his wife, and the decedent, Gerald Frye, was alone in his car.

The accident occurred on August 21, 1950, at approximately noon, on state highway No. 6, which runs in a general easterly and westerly direction between the cities of Forest Grove and Cornelius, in Washington county, Oregon, and about one mile west of Cornelius. At and near the scene of the collision, the highway is level and straight, and the paved portion thereof is approximately 20 feet in width. It being a clear day, the pavement was dry.

Just prior to the collision, plaintiff's vehicle was traveling in a westerly direction along the northerly half of said highway, and the Frye automobile was proceeding in the opposite direction on the southerly half of the road. Both cars were being operated at a speed of 35 miles per hour. Directly behind the Frye automobile, traveling in the same direction and at the same speed, was an automobile driven by one Alyce Fletcher, and in which one Louis Vearrier was a passenger.

About 100 yards from the point of collision, the Frye car began to make a gradual turn toward the left, its speed slightly decreasing, but with no turning signal being given, nor with any application of brakes. The Frye vehicle continued this gradual left turn until it was on the left side of the center of the highway and collided with plaintiff's car practically head on. As a result of this collision plaintiff suffered certain personal injuries.

Gerald Frye was found dead in his automobile immediately following the collision. During the evening of the day of the accident, a post-mortem examination of the body of Gerald Frye was conducted by Dr. Howard L. Richardson, a specialist in pathology and head of the crime laboratory for the Oregon State Police. From his examination, Dr. Richardson concluded that Gerald Frye was dead prior to the collision, and so testified on the trial. There was no direct evidence whatever to refute this conclusion.

By his complaint, plaintiff charged that Gerald Frye was negligent in the operation of his motor vehicle in (1) that he permitted his automobile to cross over the center line of the highway to the left-hand side thereof; (2) that he did not keep his vehicle under control; (3) that he was traveling on said highway at a rate of speed that was greater than was reasonable and prudent under all the conditions then existing; and (4) that he failed to yield the right of way. Plaintiff further alleged as follows:

## "IV.

"That at the said time and place the said Gerald Frye was willful, wanton and reckless and was negligent in the operation of his said vehicle in that the said Gerald Frye was then and there suffering from a diseased heart and coronary vessels which said condition was known to the said Gerald Frye, and that as a result thereof that the said Gerald Frye had upon various occasions previous to the actions complained of lost consciousness as a result of the said diseased heart and coronary vessels and that he was not capable or fit to operate a motor vehicle over and upon the public highways of the State of Oregon, and that the said Gerald Frye knew of the said condition, and that he was apt to become unconscious while operating his said motor vehicle,

and did then and there drive upon said highway with such knowledge and that at the said time and place and as a result thereof the said Gerald Frye did evidence a negligent, wanton and willful disregard for the rights of other persons then and there using the said highway and particularly the plaintiff herein, and that as a direct and proximate result thereof and in addition to the negligence herebefore specified, the plaintiff did suffer the injuries hereinafter set forth.''

By her answer defendant affirmatively alleged that Gerald Frye died a short time prior to the collision, and her theory upon the trial was that a dead person could not be guilty of the negligent operation of a motor vehicle.

Upon the conclusion of the trial and in its instructions to the jury, the trial court directed the jury to make findings upon particular questions of fact submitted to it, as authorized by § 5-403, OCLA, in addition to returning a general verdict. The questions so submitted and the answers of the jury thereto in its special verdict are as follows:

"I

"Did Gerald Frye die prior to the occurrence of the accident alleged in plaintiff's complaint?

"Yes _____
Yes or No

"II

"Prior to the occasion upon which Gerald Frye died, did Gerald Frye have knowledge that he was suffering from any heart condition, and might die, or become wholly incapacitated at any time as a result thereof?

"No _____
Yes or No

## "III

"Was Gerald Frye wholly incapacitated prior to the occurrence of the accident described in plaintiff's complaint and was such incapacity the proximate cause of the accident?

"No ................................
Yes or No."

In addition to the special verdict, the jury returned a general verdict as follows:

"We, the jury in the above entitled cause, find for the plaintiff, and assess his damages in the sum of $5,516.00."

Based upon the general and special verdicts, the court entered judgment in favor of plaintiff for the sum of $5,516.

Upon this appeal defendant presents several assignments of error, chief among which were the rulings of the trial court in denying his motion for a nonsuit and his motion for a directed verdict.

It will be noted that in reply to the first question submitted to it, the jury answered that Gerald Frye died *prior to the occurrence of the accident.* In reply to the third question submitted, the jury answered that Gerald Frye was not wholly incapacitated *prior to the occurrence of the accident.* These answers are inconsistent and irreconcilable. It is obvious that if Gerald Frye died *prior to the occurrence of the accident,* he was wholly incapacitated *prior to the occurrence of the accident.*

The jury's answer to the first interrogatory was obviously based upon the uncontradicted testimony of Dr. Richardson. Although Dr. Richardson testified positively that death occurred prior to the collision,

he was unable to say just how long prior thereto it happened. He gave the following testimony:

"Q Could you give us any time interval, from your examination, which would have elapsed between—a minimum time interval between the time of Gerald Frye's death and the time the subsequent injuries were inflicted on the body?

"A Well, I could only state, as I have stated before, that the blood pressure was completely down. No longer did blood flow take place, therefore, the phenomena of death was occurring or was existing. Now, death is a matter of terms. We know that the liver lives a longer period of time and the brain cells live and die hours after we would pronounce it dead, but the phenomena of death from the heart and the ability of the heart to keep up the body blood pressure was gone.

"Q Completely gone?

"A Had gone for a period of time. That time, I can't state."

Upon cross-examination, Dr. Richardson testified further as follows:

"Q Now this thing—the coronary thrombosis which actually—that is an instantaneous thing; is that right? I don't know too much about your medical terms; I am trying to learn.

"A Acute coronary thrombosis is one of the causes of instantaneous death.

"Q A man in this condition his arteries—he had what was it here—he had a generalized arterial [sic] schlerosis; didn't you find he had?

"A Involving the aorta and peripheral vessels, not in his heart, he had a general, I will say, thrombosis without calcification.

"* * * * *

"Q Well, Doctor, this thing that you describe up here on the board known as a blocking, whatever it is, coronary thrombosis, that appears—that

happens instantly, like that (indicating) and that is it; isn't it?

"A Some may happen instantly, others may happen gradually. There is a difference in the two. If there is calcium deposits in the wall—

"Q Can you define it to this case?

"A This case was an instant type.

"Q Just like that (indicating).

"A *I would say it was within a few seconds.*" (Italics ours.)

What the witness meant by "a few seconds" is not disclosed by the record. All we know is that "a few seconds" means more than "one second". From the time the Frye car commenced to turn gradually to the left until the impact only "a few seconds" elapsed. Both cars as they approached each other were traveling at approximately the same rate of speed, from 30 to 35 miles per hour. If only 600 feet apart when they started to approach each other, they would meet in a matter of about six seconds, because each would be traveling at the rate of 44 to 51 1/3 feet per second.

The crucial question in this case was how long in time did death precede the collision. Was Gerald Frye dead or suffering an incapacitating heart attack when his car started its gradual turn to the left side of the road? If so, he could not be found guilty of negligence on that account. The questions submitted to the jury and the answers given leave the whole matter in an uncertain state of pure conjecture. Of course, what is here said has no reference to the charge of negligence suggested in the second interrogatory, the answer to which denied plaintiff's claim in that regard.

Section 5-404, OCLA, provides:

"When a special finding of facts shall be inconsistent with the general verdict, the former shall control the latter, and the court shall give judgment accordingly."

The general verdict in favor of plaintiff can be upheld only if the special verdict and the evidence will support the conclusion that Gerald Frye was guilty of one or more of the acts of negligence charged against him in the complaint, and that such negligence was a proximate cause of the ensuing collision.

■ On its face the special finding in answer to the first interrogatory submitted to the jury is inconsistent with the general verdict, inasmuch as that finding reduces the ultimate question of negligence to one of pure speculation. General verdicts can never be based upon conjecture and speculation; they can be upheld only where there is substantial evidence in the record to support them. *Owens v. Holmes,* 199 Or 332, 261 P2d 383, 387; *Wintersteen v. Semler,* 197 Or 601, 250 P2d 420, 255 P2d 138, 147; *Spain v. Oregon-Washington R. & N. Co.,* 78 Or 355, 369, 153 P 470, Ann Cas 1917E, 1104.

■ We are not unmindful of the general rule that if the facts specially found, when construed together, are manifestly inconsistent with each other and contradictory and uncertain in their meaning, they will not control the general verdict though inconsistent with it, and that in such a case the general verdict must stand and judgment must be rendered without regard to the special findings. *Abraham v. Mack et al.,* 130 Or 32, 43, 273 P 711, 278 P 972.

■ However, in this case we face a rather unusual situation. The answer to the first interrogatory com-

ports with the undisputed testimony of Dr. Richardson. The contradiction contained in the jury's reply to the third interrogatory arises from the phrasing of the question submitted, but the result is that the answer is contrary to the undisputed evidence and is plainly opposed to reason. Because of that, the answer to the third interrogatory must be disregarded, leaving the reply to the first interrogatory unaffected.

The testimony of Dr. Richardson was more than the mere expression of an opinion by an expert witness. He conducted the post-mortem examination and testified positively to the facts thereby disclosed. He made it very plain that had death resulted from the injuries received in the collision, there would have been a flow of blood as the result thereof. That was not the case, and therefore, as a matter of fact, "the phenomena of death was occurring" (with blood pressure completely down) prior to the infliction of the wounds suffered in the collision.

Furthermore, upon the specific acts of negligence charged in plaintiff's complaint (exclusive of the allegations contained in paragraph IV thereof, supra), the evidence is purely speculative. It would be impossible from the record for a jury to truthfully say just when the incapacitating heart attack occurred, except that it occurred "a few seconds" prior to the collision. After a careful perusal of all the evidence in the case, we find ourselves in no better position than was the jury. To fix a definite time would necessarily be the result of pure guesswork.

■ The mere fact that decedent started to drive gradually toward the left side of the highway would not in and of itself constitute negligence. At that time, according to the witnesses, plaintiff's car was some

200 yards away. There is no testimony whatever as to decedent's conscious actions after he started to the left. Moreover, the evidence is also indefinite and most uncertain as to whether he was conscious when the left turn was commenced. As stated, driving to the left side of the road would not itself constitute negligence. *Spence, Adm'x v. Rasmussen et al.,* 190 Or 662, 683, 226 P2d 819; *Hartley v. Berg,* 145 Or 44, 53, 25 P2d 932; *Weinstein v. Wheeler,* 135 Or. 518, 529, 296 P 1079.

■ The jury having answered the second interrogatory contrary to plaintiff's claim of negligence made in paragraph IV of his complaint, there remains no substantial evidence in the record nor any special finding of fact to support the general verdict and judgment. We might also add that the evidence offered in support of the allegations of paragraph IV of the complaint is not only remote in point of time, but also is indefinite, insufficient, and unsatisfactory, and would not, in any event, have supported a finding that prior to the occasion upon which Gerald Frye died, he had knowledge that he was suffering from a heart condition and might die or become wholly incapacitated at any time as a result thereof.

The judgment is reversed and this cause remanded with directions to enter judgment for defendant.