Argued and submitted November 9, 2021, resubmitted January 25; decision of Court of Appeals affirmed, circuit court's judgment of conviction affirmed in part and vacated in part, and case remanded to circuit court for further proceedings; circuit court's judgment for costs of appointed counsel reversed December 1, 2022

# STATE OF OREGON,
## *Respondent on Review,*

*v.*

# RHONDA COLGROVE,
## *Petitioner on Review.*

## (CC 17CR57106) (CA A169952) (SC S068372)

### 521 P3d 456

Defendant pleaded guilty to misdemeanor driving under the influence of intoxicants and filed a petition to enter diversion. The trial court accepted defendant's guilty plea that had been filed as part of the petition, but it withheld entry of a judgment of conviction. Defendant failed to pay $335 in fees and to attend a victim impact panel within the diversion period. The trial court thereafter terminated the diversion agreement and entered a judgment of conviction. Defendant appealed, challenging her conviction on the ground that the trial court had erroneously terminated her diversion agreement. The Court of Appeals assumed that defendant's challenge was reviewable under ORS 138.105(5), but concluded that it failed on the merits. *Held*: ORS 138.105(5) precludes a defendant who pleads guilty or no contest from obtaining appellate review of legal challenges to the "conviction" in the judgment entered in the trial court. As used in that statute, the term "conviction" refers to the trial court's judgment—that is, the judicial determination of guilt as reflected in the judgment entered on the plea, which encompasses intermediate trial court rulings that led to the entry of the judgment containing that judicial determination.

The decision of the Court of Appeals is affirmed. The circuit court's judgment of conviction is affirmed in part and vacated in part, and the case is remanded to the circuit court for further proceedings. The circuit court's judgment for the costs of appointed counsel is reversed.

On review from the Court of Appeals.*

Kyle Krohn, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender.

Rolf C. Moan, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also

––––––––––––––
* On appeal from the Umatilla County Circuit Court, Paul G. Crowley and Daniel J. Hill, Judges. 308 Or App 441, 480 P3d 1026 (2021).

on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Walters, Chief Justice, and Balmer, Flynn, Duncan, Nelson, Garrett, and DeHoog, Justices.**

NELSON, J.

The decision of the Court of Appeals is affirmed. The circuit court's judgment of conviction is affirmed in part and vacated in part, and the case is remanded to the circuit court for further proceedings. The circuit court's judgment for the costs of appointed counsel is reversed.

_____

** Nakamoto, J., retired December 31, 2021, and did not participate in the decision of this case.

**NELSON, J.**

This criminal case concerns the meaning of ORS 138.105(5), which provides, in part, that "[t]he appellate court has no authority to review the validity of * * * a conviction based on the defendant's plea of guilty or no contest[.]" Specifically, we must determine whether that statute precludes a defendant who has pleaded guilty or no contest from obtaining appellate review of legal challenges to the conviction in the judgment entered in the trial court. For the reasons that follow, we conclude that such challenges are not reviewable under ORS 138.105(5). Accordingly, we affirm the decision of the Court of Appeals on different grounds.

## I.   BACKGROUND

A.  *DUII Diversion Statutes*

This case concerns a driving under the influence of intoxicants (DUII) conviction following the termination of a diversion agreement. We therefore begin by providing an overview of the statutes governing DUII diversion. *See* ORS 813.200 - 813.270 (governing the diversion program for persons charged with DUII).

Generally, a defendant charged with DUII who satisfies certain eligibility requirements may file a petition for diversion. ORS 813.215. The content of the petition is governed by ORS 813.200, and, among other things, it must include a guilty or no contest plea. If the trial court allows a diversion petition, the judge shall "[a]ccept the * * * plea" but "withhold entry of a judgment of conviction." ORS 813.230(1). The petition then becomes the agreement between the defendant and the court. ORS 813.230(2). As part of that agreement, the court "may require as a condition of a [DUII] diversion agreement that the defendant attend a victim impact treatment session" and "pay a reasonable fee to the victim impact program to offset the cost of the defendant's participation." ORS 813.235.

The diversion agreement "*shall be for a period of one year* after the date the court allows the petition." ORS 813.230(3) (emphasis added). However, if a defendant needs additional time beyond one year to complete the requirements of diversion, the defendant may request an extension

"[w]ithin 30 days prior to the end of the diversion period." ORS 813.225(1). The trial court has discretion to grant an extension if it finds that "the defendant made a good faith effort to complete the conditions of the diversion agreement and that the defendant can complete the conditions of the diversion agreement" within the requested extension of the diversion period. ORS 813.225(4). Generally, the court is permitted to grant only one extension of the diversion period, which cannot exceed 180 days from the end date of the original one-year period.[1] ORS 813.225(5), (6). "During the diversion period[,] the court shall stay the [DUII] offense proceeding pending completion of the diversion agreement or its termination." ORS 813.230(3).

At any time before the court dismisses the DUII charge with prejudice, or on the court's own motion or the motion of a district or city attorney, the court may issue an order requiring the defendant to show cause why the court should not terminate the diversion agreement. ORS 813.255(1). The order to show cause must (1) state the reasons for the proposed termination; (2) set an appearance date; and (3) specify the amount of any fees owed and, if the fees owed are less than $500, inform the defendant that the court may dismiss the DUII charge with prejudice if the defendant "has complied with and performed all of the conditions of the diversion agreement and pays the remaining amount before or on the date of the hearing." *Id.* The order must be served on the defendant and on the defendant's attorney, if any. ORS 813.255(2). The court "*shall terminate* the diversion agreement and enter the guilty plea or no contest plea" if the defendant "fails to appear at the hearing on the order to show cause or if, at the hearing on the order to show cause, the court finds by a preponderance of the evidence" that the defendant no longer qualifies for diversion under ORS 813.215 or "[t]he defendant failed to fulfill all of the terms of the diversion agreement." ORS 813.255(3) (emphasis added).

However, if a defendant has fully complied with and performed the conditions of the diversion agreement, the

---

[1] There is an exception that is inapplicable in this case. *See* ORS 813.225(7) (exception for certain members of the military).

defendant is entitled to dismissal of the DUII charge with prejudice. *See* ORS 813.250(1) ("At any time after the conclusion of the period of a [DUII] diversion agreement described in ORS 813.230, a defendant who has fully complied with and performed the conditions of the diversion agreement may apply by motion to the court wherein the diversion agreement was entered for an order dismissing the charge with prejudice."); *see also City of Pendleton v. Standerfer*, 297 Or 725, 731, 688 P2d 68 (1984), *abrogated on other grounds by State v. Probst*, 339 Or 612, 124 P3d 1237 (2005) (explaining that "[a] defendant who has fully complied with and performed the conditions of the diversion agreement is entitled to have the charge dismissed with prejudice," citing the substantively identical statutory precursor to ORS 813.250(1)). Additionally, if a defendant appears at a show cause hearing, "the court *shall dismiss* with prejudice" the DUII charge if the defendant has complied with all diversion conditions except for the payment of $500 or less in fees, provided the remaining fees are paid by 5:00 p.m. on the day of the show cause hearing. ORS 813.255(5) (emphasis added).

B.  *The Facts*

With that understanding of the statutes, we set out the basic facts. Defendant pleaded guilty to misdemeanor DUII and filed a petition to enter diversion. Defendant's diversion petition stated, in part, that she had "read and underst[ood] all of the information in the attached *Explanation of Rights and DUII Diversion Agreement*" and "agree[d]," among other things, to "[a]ttend a victim impact panel as ordered by the court." (Emphasis in original.) The accompanying Explanation of Rights and DUII Diversion Agreement form stated, in part, that, if defendant "fail[ed] to fulfill the terms of the agreement by the end of the diversion period, the court [would] sentence [her] without a trial." Defendant's guilty plea also included a statement that defendant understood that, if she "fail[ed] to comply with the diversion agreement within the diversion period, the court [would] enter a judgment of conviction on the charge and w[ould] sentence [her]." The trial court issued an order allowing defendant's diversion petition, ordering her to attend a victim impact panel, and establishing a one-year diversion period with specific beginning and ending dates.

As required by ORS 813.230, the trial court also accepted defendant's guilty plea that had been filed as part of the petition, but it withheld entry of a judgment of conviction.

Defendant failed to pay $335 in fees and to attend a victim impact panel within the diversion period. The trial court thereafter terminated the diversion agreement and entered a judgment of conviction, and defendant appealed.[2] As pertinent here, defendant challenged her conviction on the ground that the trial court had erroneously terminated her diversion agreement either because the agreement had not set a deadline to attend the victim impact panel or because the trial court had discretion to waive the attendance requirement. The Court of Appeals assumed that defendant's challenge was reviewable under ORS 138.105(5), but concluded that it failed on the merits. *State v. Colgrove*, 308 Or App 441, 480 P3d 1026 (2021). We allowed defendant's petition for review and now address the reviewability issue that the Court of Appeals did not—*viz.*, whether ORS 138.105(5) precludes a defendant who pleads guilty or no contest from obtaining appellate review of legal challenges to the conviction in the judgment entered in the trial court.

## II.  REVIEWABILITY UNDER ORS 138.105(5)

### A.  *Defendant's Arguments*

Again, ORS 138.105(5)—set out in full below—provides, in part, that the appellate court has no authority "to review the validity of * * * a conviction based on the defendant's plea of guilty or no contest[.]" Defendant advocates a

---

[2] After the trial court entered the original judgment of conviction, it amended that judgment in ways that are not material to our review. Although defendant appealed the original and amended judgments, we refer to "the judgment of conviction" throughout this opinion.

Defendant also appealed a separate judgment entered on December 3, 2018, that required her to pay a particular amount for the cost of court-appointed counsel. On appeal, defendant challenged, among other things, the imposition of various fines and fees in the judgment of conviction and the imposition of the costs of counsel in the December 3, 2018, judgment. Ultimately, the Court of Appeals reversed the latter judgment and vacated the $255 DUII conviction fee in the judgment of conviction, remanded the entire case for resentencing, and otherwise affirmed. On review, defendant has not challenged those rulings in the event that we reject her contentions related to the conviction itself. Accordingly, we do not discuss those rulings further.

narrow reading of that statute. Specifically, she contends that the resolution of the reviewability issue reduces to the meaning of the term "conviction" as it is used in ORS 138.105(5). Noting that the term is not defined for purposes of that statute, defendant asserts that the term should be given its legal meaning. *See Ogle v. Nooth*, 355 Or 570, 578, 330 P3d 572 (2014) ("[W]hen words are used in the context of a legal proceeding * * * they may be used as legal terms of art, and, if so, we give precedence to their legal meanings."). According to defendant, in *Vasquez v. Courtney*, 272 Or 477, 480, 537 P2d 536 (1975), this court explained that the term "conviction" has two accepted meanings:

> "The first refers to a finding of guilt by a plea or verdict. The second, more technical meaning refers to the final judgment entered on a plea or verdict of guilt. In the latter case conviction has not been accomplished until the judgment is made by the court."

*See also Webster's Third New Int'l Dictionary* 499 (unabridged ed 2002) (defining "conviction" to mean "the act of proving, finding, or adjudging a person guilty of an offense or crime").

In the context of ORS 138.105(5), defendant contends that the term "'conviction' means 'finding of guilt'" because the term "usually has that meaning in statutes governing criminal procedures—such as appeals—whereas it means judgment of conviction in statutes governing collateral consequences or collateral review," and because "interpreting conviction as a finding of guilt" rather than as "a judgment of conviction" is consistent with "[o]ther parts of ORS chapter 138." Defendant further argues that the legislative history supports that interpretation. Specifically, as defendant explains, "[t]he evolution of Oregon's criminal appeal statutes contains little evidence that the legislature intended to preclude appellate review of diversion terminations. And the legislature's 2017 revision of the appeal statutes shows that it intended to relax the strict limits on review after a guilty plea that had previously applied." Accordingly, defendant reasons that, "[u]nder ORS 138.105(5), defendants who plead guilty may not challenge their factual guilt, but they may raise other legal challenges to the entry of a judgment of conviction—including the erroneous termination of diversion."

To resolve defendant's contentions, we must interpret ORS 138.105(5). When interpreting a statute, our goal is to determine the legislature's intent by examining the statutory text in context along with any legislative history that appears useful to our analysis. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). As we will explain, although defendant's proposed construction of the term "conviction" in ORS 138.105(5) to mean "finding of guilt" is not wholly implausible, her construction becomes untenable when the text of the statute is viewed in context and in the light of its legislative history.

B.   *Statutory Text*

We begin with the text of the statute, which was enacted as part of Senate Bill (SB) 896 (2017). ORS 138.105(5), provides, in full:

> "*The appellate court has no authority to review the validity of* the defendant's plea of guilty or no contest, or *a conviction based on the defendant's plea of guilty or no contest*, except that:
>
> "(a)   The appellate court has authority to review the trial court's adverse determination of a pretrial motion reserved in a conditional plea of guilty or no contest under ORS 135.335.
>
> "(b)   The appellate court has authority to review whether the trial court erred by not merging determinations of guilt of two or more offenses, unless the entry of separate convictions results from an agreement between the state and the defendant."

(Emphases added.)

According to defendant, the legislature intended the term "conviction" in the first part of that statute to mean "finding of guilt." It is plausible that, as used in the phrase "a conviction based on the defendant's plea of guilty or no contest," the term "conviction" could have that meaning. As noted, in *Vasquez*, this court identified "finding of guilt by a plea or verdict" as an accepted legal meaning of the term "conviction." 272 Or at 480.

Further, defendant argues that "[t]he fact that ORS 138.105(5) proscribes review of challenges to both the plea

and the conviction suggests that those words encompass different things"—that is, "[t]he plea is the defendant's acknowledgment of guilt, whereas the conviction is the court's finding of guilt based on the plea." (Emphases omitted.) According to defendant, if "conviction" means "'judgment of conviction,' a challenge to the plea would be precluded as a challenge to the conviction," and the word "plea" becomes redundant. As defendant reasons,

> "interpreting 'conviction' to mean 'finding of guilt' avoids redundancy by allowing conviction and plea to mean different things. By precluding review of the plea, the statute bars defendants from arguing that their decision to plead guilty was not knowing or voluntary.[3] By precluding review of the conviction, the statute bars defendants from disputing the court's finding of guilt based on the plea. But the statute does not bar defendants from arguing that, notwithstanding their factual guilt, some other legal impediment precludes the entry of a judgment of conviction. Defendant's interpretation avoids redundancy and gives full effect to each word in the statute."

However, defendant's proffered interpretation of the term "conviction" also introduces redundancy into the statute. That is so because, if defendant were correct that an appellate court has authority to review all legal challenges other than challenges to the validity of the plea or the "finding of guilt" in the plea, then much of ORS 138.105(5) becomes meaningless surplusage. Specifically, there would have been no reason for the legislature to have authorized review of an adverse determination of a pretrial motion reserved in a conditional plea under ORS 135.335 or a trial court ruling not to merge determinations of guilt into one or more separate convictions.

By contrast, as noted above, "conviction" also can refer to "the final judgment entered on a plea or verdict of guilt." *Vasquez*, 272 Or at 480; *see id.* at 479 ("A 'judgment' in a criminal case constitutes a judicial determination of guilt

---

[3]  *See* ORS 135.390(1) ("The court shall not accept a plea of guilty or no contest without first determining that the plea is voluntary and intelligently made."); *Dixon v. Gladden*, 250 Or 580, 585, 444 P2d 11 (1968) (explaining that a valid guilty plea "must be voluntary and must be understandingly made with knowledge by the party of his rights"); *see also State v. King*, 361 Or 646, 666, 398 P3d 336 (2017) (same).

based on a verdict or plea of guilty and imposes a penalty for the transgression committed by the defendant."); *see also State v. McDonnell*, 306 Or 579, 581-82, 761 P2d 921 (1988) ("A plea or verdict of guilty is not synonymous with a conviction. *** A 'judgment of conviction' represents the combined factual and legal determinations that the defendant committed acts constituting a crime and that there is no legal impediment to so declaring; it is the string that ties up the package."). If "conviction" refers broadly to the judicial determination of guilt reflected in the judgment entered on the plea and an appellate court has no authority to review challenges to the "conviction," then the need for the express exceptions embodied in ORS 138.105(5)(a) and (b) becomes apparent.

Further, adopting defendant's understanding of ORS 138.105(5) would require us to conclude that the word "conviction" means different things within the statute itself. Specifically, ORS 138.105(5)(b) also uses the term "conviction" in the context of an exception authorizing the appellate court to review a trial court's decision not to merge multiple determinations of guilt, "unless the entry of separate *convictions* results from an agreement between the state and the defendant." (Emphasis added.) In that context, "conviction" more naturally refers to the judicial determination of guilt reflected in the judgment entered on the plea. *See* ORS 137.071(2)(f) (providing that a "judgment document" shall include the court's determination of each charge); ORS 137.071(2)(g) (noting that a "determination" may include a "determination *** of conviction"); *see also State v. White*, 346 Or 275, 279 n 4, 211 P3d 248 (2009) (explaining that a "defendant is not formally 'convicted' on any charge until the trial court enters a judgment").

When interpreting statutes, we generally assume that "the legislature intended the same word to have the same meaning throughout related statutes unless something in the text or context of the statute suggests a contrary intention." *Village at Main Street Phase II v. Dept. of Rev.*, 356 Or 164, 175, 339 P3d 428 (2014). Further, we typically presume that the legislature intended to avoid "meaningless surplusage." *State v. Clemente-Perez*, 357 Or 745, 755, 359 P3d 232 (2015); *see also Vsetecka v. Safeway Stores,*

*Inc.*, 337 Or 502, 510, 98 P3d 1116 (2004) ("When, as in this case, a statute contains multiple provisions, ORS 174.010 directs us to read those provisions, if possible, in a way that will give effect to all of them."). Because defendant's proposed construction of the term "conviction" would render significant parts of ORS 138.105(5) meaningless and would require us to assume that the legislature ascribed different meanings to the term "conviction" within the statute itself, we conclude as a textual matter that the legislature appears to have intended the term to have its alternative, accepted legal meaning—that is, "conviction" refers to the judicial determination of guilt reflected in the judgment entered on the plea of guilty or no contest.

C.   *Statutory Context*

   1.   *ORS 138.105 and related statutes*

      Further examination of the statutory context confirms that conclusion. *See SAIF v. Ward*, 369 Or 384, 394, 506 P3d 384 (2022) ("The context of a statute includes other provisions of the same statute and related statutes, as well as the preexisting common law and the statutory framework within which the statute was enacted." (Internal quotation marks omitted.)). As noted, ORS 138.105(5) is a single provision enacted as part of SB 896—a comprehensive bill addressing the procedural law governing criminal appeals that was submitted to the legislature by the Oregon Law Commission.

      As a result of the enactment of SB 896, separate but interrelated statutes govern "appealability" and "reviewability" in appeals by defendants and by the state. *See* ORS 138.035 (governing appeals by defendants); ORS 138.105 (governing reviewability in defendants' appeals); ORS 138.045 (governing appeals by the state); ORS 138.115 (governing reviewability in state's appeals); *see also* ORS 138.005(2) (defining "appealable," to mean, "in reference to a judgment or order rendered by a trial court, that the judgment or order is, by law, subject to appeal by a party"); ORS 138.005(4) (defining "reviewable" to mean, "in reference to a particular decision of a trial court on appeal from an appealable judgment or order, that the appellate court may, by law, consider the decision and resolve an issue regarding the decision").

As pertinent here, a defendant, among other things,

"may take an appeal from the circuit court *** to the Court of Appeals from a judgment:

"(A)   Conclusively disposing of all counts in the accusatory instrument or conclusively disposing of all counts severed from other counts;

"(B)   Convicting the defendant of at least one count; and

"(C)   Imposing sentence on all counts of which the defendant was convicted."

ORS 138.035(1)(a); *see also* ORS 138.071(1) (requiring generally that an appeal be filed within 30 days "after the judgment or order appealed from is *entered* in the register" (emphasis added)). In sum, a defendant may appeal a "judgment" that has been entered in the register that contains a "conviction" and a "sentence."

If a defendant appeals such a judgment, ORS 138.105 governs the issues that an appellate court may review. ORS 138.105(5)—the provision at issue in this case—is one of many interrelated subsections in a statute that appears designed to function as an integrated whole. Appellate courts are authorized "to review the judgment or order being appealed, subject to the provisions of this section." ORS 138.105(1). Generally, "[e]*xcept as otherwise provided in* [*ORS 138.105*], the appellate court has authority to review any intermediate decision of the trial court." ORS 138.105(3) (emphasis added). To the extent that "conviction" is understood to mean the judicial determination of guilt as reflected in the judgment entered on the plea (as our textual analysis suggested), the appellate court's lack of authority to review "the validity of *** a conviction based on the defendant's plea of guilty or no contest" in ORS 138.105(5) is an exception to the general authority to review intermediate decisions in ORS 138.105(3). That is so because, if the lack of authority to review a "conviction" in ORS 138.105(5) did not also encompass intermediate trial court rulings that led to the entry of the judgment containing that judicial determination, there would have been no need to explicitly

authorize review, as set out in ORS 138.105(5)(a), of "the trial court's adverse determination of a pretrial motion reserved in a conditional plea of guilty or no contest under ORS 135.335."

In addition, although ORS 138.105(5) precludes review of "the validity of *** a conviction based on the defendant's plea of guilty or no contest," ORS 138.105(7) generally authorizes the appellate courts to "review any sentence to determine whether the trial court failed to comply with the requirements of law in imposing or failing to impose a sentence," subject to two exceptions. *See* ORS 138.105(8) (governing reviewability of "a sentence imposed on conviction of a felony committed on or after November 1, 1989"); ORS 138.105(9) (precluding review of "any part of a sentence resulting from a stipulated sentencing agreement between the state and the defendant"). The term "sentence" is defined to mean "all legal consequences established or imposed by the trial court after *conviction* of an offense," including, but not limited to, a long list of consequences.[4] ORS 138.005(5) (emphasis added). Thus, the use of the term "conviction" in the definition of "sentence" supports our understanding that the term was intended to refer to a judicial determination of guilt reflected in a judgment for which a trial court could impose a sentence. *See McDonnell*, 306 Or at 581 ("[T]he statutory scheme concerning the conviction of criminal defendants *** include[s] the following four distinct events: (1) defendant's act of pleading guilty or a jury's act in reporting a verdict of guilty; (2) acceptance by the trial judge of the guilty plea or verdict; (3) conviction of the defendant on the plea or verdict; and (4) pronouncement and entry of defendant's sentence.").

---

[4] ORS 138.005(5) provides:

"'Sentence' means all legal consequences established or imposed by the trial court after conviction of an offense, including but not limited to:

"(a) Forfeiture, imprisonment, cancellation of license, removal from office, monetary obligation, probation, conditions of probation, discharge, restitution and community service; and

"(b) Suspension of imposition or execution of any part of a sentence, extension of a period of probation, imposition of a new or modified condition of probation or of sentence suspension, and imposition or execution of a sentence upon revocation of probation or sentence suspension."

### 2.  *Preexisting common law and statutory framework*

As noted, the context of a statute also includes "the preexisting common law and the statutory framework within which the statute was enacted." *Ward*, 369 Or at 394 (internal quotation marks omitted); *see State v. Cloutier*, 351 Or 68, 100, 261 P3d 1234 (2011) ("Our analysis of [a statute] is also informed by this court's prior construction of that statute or its predecessors."); *see also State v. Rusen*, 369 Or 677, 685, 509 P3d 628 (2022) (recognizing principle that context includes case law existing at the time of a statute's adoption). Because SB 896 retained significant features of the preexisting common law and statutory framework related to the concepts of "appealability" and "reviewability" in cases involving guilty and no contest pleas, an understanding of that framework is an appropriate place to start before we turn to the bill's legislative history.

In a nutshell, the task of determining whether an appellate court had jurisdiction of an appeal in a criminal case and, if it did, whether the appellate court had authority to review the issues that an appellant had raised on appeal, was complex. To resolve those issues, appellate courts were often placed in the position of applying multiple interrelated statutes in ORS chapter 138 that, in turn, had been interpreted by the courts in myriad contexts over the course of many years. Those statutes, and the case law interpreting them, did not always clearly distinguish between the concepts of "appealability" and "reviewability."

That lack of clarity was particularly acute in the context of cases in which defendants had pleaded guilty or no contest and thereafter sought to appeal. In *Cloutier*, this court described, in detail, the history of four interrelated statutes in ORS chapter 138 that governed appealability and reviewability following a guilty or no contest plea, which were all eventually repealed by SB 896: (1) *former* ORS 138.040 (2015), *repealed by* Or Laws 2017, ch 529, § 26 (generally governing appeals by defendants in criminal matters); (2) *former* ORS 138.050 (2015), *repealed by* Or Laws 2017, ch 529, § 26 (generally governing appealability and reviewability following guilty or no contest pleas); (3) *former* ORS 138.053 (2015), *repealed by* Or Laws 2017, ch 529,

§ 26 (governing appealable dispositions); and (4) *former* ORS 138.222 (2015), *repealed by* Or Laws 2017, ch 529, § 26 (governing appeal and review of sentences imposed for felonies committed on or after November 1, 1989).[5]

As the court in *Cloutier* explained, in 1864, the "legislature first conferred appellate jurisdiction to review a judgment entered in a criminal case" in a statute that also permitted review of intermediate trial court rulings. 351 Or at 76. Thereafter, the legislature enacted new sentencing laws in 1905, and this court was eventually asked to determine whether an appellate court could review a sentence imposed under those laws after a defendant had pleaded guilty. *Id.* at 77. The court concluded that the legislature had implicitly conferred such authority in the 1864 statute that authorized appeals from judgments of conviction, "which the court held included convictions based on guilty pleas." *Id.* (describing *State v. Lewis*, 113 Or 359, 230 P 543 (1924), *adh'd to on reh'g*, 113 Or 370, 232 P 1013 (1925)). "[T]he effect of a guilty plea [was] to admit the facts as charged in the indictment; but that [did] not preclude a defendant who [had] so pleaded from advancing purely legal challenges to the lawfulness of the conviction or the sentence that resulted." *Id.* (describing *Lewis*, 113 Or at 361-62). Then, in 1945, the law changed when the legislature enacted a new statute that explicitly gave defendants who pleaded guilty the right to appeal, but "limited the nature of the issues that could be the basis of such an appeal to the excessiveness of the sentence." *Cloutier,* at 77-78.

In 1953, the legislature revised and codified the state's then-existing statutes into the Oregon Revised Statutes. *Id.* at 79. The legislature's original 1864 grant of appellate jurisdiction to review a judgment entered in a criminal case was codified at *former* ORS 138.040, essentially unchanged from the original version. *Id.* And the

---

[5] As we will explain, the history of those statutes spans a period exceeding 150 years. Statutes were enacted, repeatedly amended, and at times recodified. Further, the statutes were interpreted by the appellate courts at various points in between. Our typical practice is to specify the date associated with a former statute each time we refer to it. However, for convenience, we depart from that practice here and, throughout the remainder of this opinion, refer generally to each former statute without further specification.

legislature's 1945 authorization of appeals from judgments on guilty pleas was codified at *former* ORS 138.050, also essentially unchanged from its original version. *Id.*

This court was later asked to address the effect of *former* ORS 138.050 in *State v. Jairl*, 229 Or 533, 368 P2d 323 (1962). In *Jairl*, the defendant appealed a judgment of conviction based on a guilty plea, arguing that the trial court had erred in failing to dismiss the charge against him for violation of a state statute that required the timely return of an indictment and in pronouncing sentence in the absence of counsel. The defendant contended that, because of those errors, he had been denied a fair trial as guaranteed by the state and federal constitutions. *Id.* at 538. The court explained that *former* ORS 138.050 prohibited "appellate review of convictions based upon a plea of guilty except to the limited extent granted by" the statute itself. *Id.* at 541. Noting that *former* ORS 138.040 was the only statute with wording broad enough to encompass the defendant's challenge, the court reasoned that the restrictions in *former* ORS 138.050, in effect, had overruled the court's earlier decision in *Lewis* in which the court had held that *former* ORS 138.040 permitted defendants who had pleaded guilty to advance legal challenges to the lawfulness of the conviction or the sentence that resulted from the plea. *Id.* at 539, 541.

Thereafter, the legislature amended *former* ORS 138.050 on multiple occasions to effect changes in the scope of appealability and reviewability. *See Cloutier*, 351 Or at 80-90 (describing 1977 and 1985 amendments to *former* ORS 138.050). In 1989, the legislature overhauled the state's sentencing laws. *Id.* at 90. As a result, "appeal and review of sentences imposed for felonies committed after November 1, 1989, [was] governed by [*former*] ORS 138.222," and "[*former*] ORS 138.040 and [*former*] ORS 138.050 [applied] only to appeal and review of sentences for misdemeanor offenses." *Id.* at 91. In addition, the legislature sought "to make clear that probation [was] among the categories of sentencing decisions that [were] subject to the appellate jurisdiction of the courts." *Id.* As a result, the legislature amended both *former* ORS 138.040 and *former* ORS 138.050 by replacing the word "sentence" with the word "disposition," and then

enacted *former* ORS 138.053, which specified five types of appealable dispositions. *Id.* at 91-92.

Although the scope of appellate court review of sentences or dispositions in cases involving guilty or no contest pleas varied over the years, one aspect of the law had remained constant: *Former* ORS 138.050 and *former* ORS 138.040 prohibited "a defendant's challenge to a conviction— as opposed to a sentence—when the defendant ha[d] pleaded guilty." *State v. Clements*, 265 Or App 9, 21, 333 P3d 1177 (2014), *rev den*, 356 Or 689 (2015); *see also State v. Davis*, 265 Or App 425, 431, 335 P3d 322 (2014), *rev den*, 356 Or 837 (2015) ("[*Former*] ORS 138.050 prohibits a defendant who pleads guilty or no contest to either a misdemeanor or a felony from challenging his conviction on appeal." (Emphasis omitted.)).

As the foregoing history demonstrates, when the legislature passed SB 896 in 2017, it had long been settled that, when a defendant who had pleaded guilty or no contest appealed, the defendant could not challenge the conviction. Over time, many legal challenges arising in different contexts before the enactment of SB 896 were deemed to be challenges to a defendant's conviction that fell within the bar just described. *See, e.g.*, *State v. Clevenger*, 297 Or 234, 236, 683 P2d 1360 (1984) (entry of judgment without making a proper inquiry into the adequacy of the factual basis for the plea); *State v. Woodard*, 121 Or App 483, 485, 855 P2d 1139, *rev den*, 318 Or 26 (1993) (conviction for the crime to which the defendant had pleaded as opposed to another crime); *State v. Balukovic*, 153 Or App 253, 255-56, 258, 956 P2d 250 (1998) (revocation of defendant's deferred sentencing program for failure to comply with a purportedly unlawful condition and failure to furnish a competent interpreter at the revocation hearing); *State v. Anderson*, 215 Or App 643, 171 P3d 972 (2007) (lack of authority to enter a judgment of conviction where the plea had a proviso that a conviction would not be entered unless the defendant failed to satisfy a condition and the court erroneously determined that a condition had not been satisfied); *State v. Brown*, 225 Or App 207, 208, 199 P3d 890 (2009) (acceptance of an involuntary plea); *State v. Landahl*, 254 Or App 46, 48-49, 292 P3d 646 (2012), *rev den*, 353 Or 788 (2013) (set aside of

previous judgment dismissing DUII charge); *Clements*, 265 Or App at 23 (denial of motion to withdraw plea); *State v. Herrera*, 280 Or App 830, 832, 383 P3d 301 (2016), *rev den*, 360 Or 852 (2017) (entry of judgment where the state had failed to initiate revocation proceedings before the period of conditional discharge had expired).

One legal challenge had "vexed" the Court of Appeals over the years—namely, whether "a challenge to a trial court's decision not to merge multiple determinations of guilt, resulting in the entry of a judgment reflecting multiple convictions, is a challenge to one or more of those convictions" that "cannot confer jurisdiction on [the] court in a case in which the defendant had pleaded guilty or no contest." *Davis*, 265 Or App at 433-34. In *State v. Sumerlin*, 139 Or App 579, 584-85, 913 P2d 340 (1996), the Court of Appeals had ruled that such challenges were reviewable because they pertained to whether a disposition exceeded the maximum allowable by law. Thereafter, the Court of Appeals repeatedly adhered to its decision in *Sumerlin*, rejecting arguments that that case had been wrongly decided. *Davis*, 265 Or App at 434.

In sum, at the time that the Oregon Law Commission submitted SB 896 to the legislature for consideration in 2017, the preexisting statutory and common law framework had three salient features. First, a defendant who had pleaded guilty or no contest could not obtain review of legal challenges pertaining to a conviction, but could obtain review of challenges pertaining to a sentence, the scope of which was governed by statute. Second, "conviction" was understood broadly to encompass all decisions that led to the entry of the judgment reflecting the trial court's judicial determination of a defendant's guilt. Third, legal challenges concerning merger were reviewable. As we will explain—and contrary to defendant's contentions that SB 896 "is more like the 1864 law" on reviewability and was intended to "preclude[] review of the guilty finding but permit[] review of other rulings"—the legislative history demonstrates an intent to retain those three aspects of the preexisting framework while making some changes to the scope of review of sentencing decisions in misdemeanor cases.

D.   *Legislative History*

The primary legislative history is a work group report that the commission submitted to the legislature, explaining SB 896 in detail. Exhibit 37, Senate Committee on Judiciary, SB 896, Apr 6, 2017 (Report of the Direct Criminal Appeals Work Group on SB 896 (2017), Oregon Law Commission) (Criminal Appeals Report). The work group had been tasked with "reorganizing, streamlining, and clarifying existing statutory provisions." Criminal Appeals Report at 2. In addition, the work group "propose[d] to codify some case law, to modernize some older statutory provisions, and to make a few substantive changes to the law, as outlined in this Legislative Report." *Id.* As Judge Stephen Bushong—a Commissioner of the Oregon Law Commission and the work group's chair—explained to the legislature, the purpose of the report was to provide "a roadmap for the practitioners who utilize this *** system," because, "any time you change a word or two in a *** statute," lawyers "think *** there's some significance or what's the meaning of that change" and the work group "wanted to explain in some detail what [it] did and why, so that it was clear and understandable." Audio Recording, Senate Committee on Judiciary, SB 896, Apr 6, 2017, at 1:28:47 (testimony of Judge Stephen Bushong), https://olis.oregonlegislature.gov (accessed Nov 16, 2022).

Although defendant points to various memoranda in appendices attached to the report to support her contention that the work group likely intended to make legal challenges reviewable (such as, *e.g.*, an erroneous termination of a defendant's diversion), the report explained that "[t]he memoranda reflect[ed] the views of the respective authors of the memoranda and [did] not necessarily reflect the view of all Work Group members or the Work Group collectively." Criminal Appeals Report at 3. Further, each memorandum began with a disclaimer stating, "Disclaimer: Any legal analysis or expression of opinion is that of the author of the memorandum and do not necessarily reflect the views of the Oregon Law Commission, the Work Group as a whole[,] or its members." *See, e.g.*, *id.* at 29 (boldface omitted). Because the memoranda did not reflect the intention of the work group or the Oregon Law Commission, and because there is no indication that the legislature intended to depart from

the work group's official position, we focus on the text of the report itself as opposed to its appendices. *See Gaines*, 346 Or at 166 ("[T]he court may give whatever weight it deems appropriate to the legislative history that a party offers.").

According to the report, "the current statutory scheme (and case law)" did not "always clearly distinguish" between "appealability" (*i.e.*, "a circuit court decision that the Legislature has authorized the State or the defendant to appeal, such as a judgment of conviction and sentence") and "reviewability" (*i.e.*, "whether the appellate court may consider and decide requests to review the validity of any of the myriad decisions a trial court may make along the way to rendering an appealable judgment or order"). Criminal Appeals Report at 5-6. The report explained that those concepts were not congruent for a variety of reasons, including that, in the context of cases involving guilty or no contest pleas, "the Legislature ha[d] disallowed appellate court review of the trial court's decision to enter a judgment of conviction for [the] crime." *Id.* at 6.

As pertinent to the interpretive issue in this case, the report explained that the primary intent behind what is now ORS 138.105(5) was to restate existing legal principles. Paragraph (5)(a) was "intended to restate the principle currently found in [*former*] ORS 138.050(1)(a)"—that is, when a defendant has "pleaded guilty or no contest to the offense of which the defendant was convicted, on appeal, the appellate court may not review the validity of the plea or the conviction, except when the defendant, under ORS 135.335, has reserved in writing an adverse pre-trial trial court ruling for appeal." Criminal Appeals Report at 20. Paragraph (5)(b) was "new statutory law relating to merger of determinations of guilt." *Id.* Citing the Court of Appeals decisions in *Sumerlin* and *Davis*, the report explained that, "conceptually, merger has to do with whether the defendant is guilty of one or more offenses." *Id.* The report further explained that paragraph (5)(b) reflected the current "appellate practice and authorize[d] appellate court review of a merger issue," subject to a new limitation precluding review "if the trial court convicted the defendant of multiple offenses pursuant to a plea agreement in which the defendant agreed to plead guilty or no contest to the convictions in question." *Id.* at 20-21.

Further, the report identified an intent to expand the scope of review of sentences for misdemeanor offenses, in what became ORS 138.105(7). Criminal Appeals Report at 21; *see id.* at 9 n 4 ("[T]he Work Group does intend to change the scope of review on appeal of sentences for misdemeanor convictions."). Relatedly, the report explained that the work group had broadly defined the term "sentence" to mean "all of the legal consequences a court may impose based on a conviction, including post-judgment events such as probation revocation" and that the nonexclusive list of legal consequences specifically delineated in what is now ORS 138.005(5)(a) and (b) were "derived from the list of legal consequences described in ORS 137.071(1)(g) that a judge may impose and, if so imposed, must be in the judgment of conviction," and "the list of 'dispositions' presently found in [*former*] ORS 138.053(1)," respectively. Criminal Appeals Report at 9.

In sum, consistently with the preexisting common law and statutory framework, the work group intended to "restate" the principle that a defendant who had pleaded guilty or no contest could not obtain review of legal challenges to the judicial determination of guilt reflected in the judgment on appeal, which encompassed intermediate trial court decisions, as evidenced by the exception identified for review of adverse pretrial rulings under ORS 135.335.[6] The work group also acknowledged that, conceptually, "merger" relates to whether a trial court may convict a defendant of one or more offenses, and it created an exception authorizing review, which essentially codified the existing appellate practice. Finally, the work group retained appellate court

---

[6] *See also* Criminal Appeals Report at 14 ("Historically, Oregon law has imposed limits on a defendant's opportunity to appeal when a conviction is based on a plea of guilty or no contest. However, there are exceptions. [*Former*] ORS 138.050(1) currently allows a defendant to appeal from a judgment of conviction based on a guilty or no contest plea if, under ORS 135.335, as a part of the defendant's plea, the defendant has reserved in writing an adverse pre-trial court ruling for appeal. [*Former*] ORS 138.050(1) also allows an appeal where the defendant wishes to take issue with the sentence imposed by the trial court."); *id.* at 20 (discussing the provision of the bill that became ORS 138.105(3), the general authorization to review "any intermediate decision of the trial court"; explaining that the text of that provision includes "a qualifier—'except as provided in this section'—because, under current law, there are limits on the appellate courts' authority to review intermediate trial court decisions, and the bill carries forward those limitations" (brackets omitted)).

authority to review challenges to sentences—the legal consequences that a court may impose after conviction—but expanded the scope of that sentence review in the context of misdemeanor cases.

Defendant contends, however, that the legislative history indicates that "the legislature did not retain the limits of *former* ORS 138.050 or anything like them." Specifically, defendant points to aspects of the legislative history indicating that the legislature understood that SB 896 "would expand appellate review in misdemeanor cases." From that history, defendant reasons that it should "come as no surprise that the bill would allow review in misdemeanor cases that were not reviewable before, such as DUII diversion cases." *See, e.g.*, Audio Recording, Senate Floor Debate, SB 896, June 14, 2017, at 35:16 (statement of Sen Floyd Prozanski), https://olis.oregonlegislature.gov (accessed Nov 16, 2022) ("The measure provides more opportunity for the appeal of misdemeanor cases, but, at this point, we're not sure exactly what impact it may have or not have. The number of appeals will increase."). However, our understanding of the legislative history is different than defendant's.

Defendant's contention finds its origin in discussions concerning the expansion of the scope of review of misdemeanor sentences. The fiscal impact statement associated with SB 896 indicated that the impact was "indeterminate" and explained that "[t]he Department of Justice (DOJ) [had noted] that[,] because the measure provides for more opportunity to appeal misdemeanor cases, there is likely to [be] some impact on the Appellate Division's Defense of Criminal Convictions program." Fiscal Impact Statement, SB 896, Apr 5, 2017.

In addressing the potential, indeterminate fiscal impact, then-Appellate Commissioner James W. Nass—who had authored the Criminal Appeals Report as the work group's reporter—acknowledged that the change in the scope of review of misdemeanor sentences could lead to an increase in the number of cases. Audio Recording, Joint Committee on Ways and Means Subcommittee on Public Safety, SB 896, June 5, 2017, at 22:58 (testimony of James W. Nass), https://olis.oregonlegislature.gov (accessed Nov 16,

2022). However, Nass explained that such an increase was "not likely" because misdemeanor sentences cannot exceed one year in length and cases challenging such sentences therefore "usually become moot" while an appeal is pending. *Id.* at 23:02. According to Nass, the expansion of the scope of review of sentences in misdemeanor cases

> "was one of the contentious issues that the representatives of the district attorneys' office[s], defense bar, and then the Office of Public Defense Services and Solicitor General's Office *** discussed and worked their way through. I was not a party to that, but the representation at the end of the day was that they all could live with this."

*Id.* at 24:38. In conclusion, Nass commented, the work group "certainly would not have advocated for making a change in the law if [the group] thought it would substantially increase the court's workload." *Id.* at 24:05. Aaron Knott, Legislative Director for the Department of Justice, essentially expressed agreement with Nass's assessment of the potential fiscal impact, *id.* at 27:35, as did Ernest Lannet, Chief Defender of the Criminal Appellate Section of the Appellate Division of the Office of Public Defense Services and a member of the work group, who testified that "Commissioner Nass has *** represented what has gone on and the process and where we ended up," *id.* at 30:38.

In the light of that history, defendant is correct that the legislature understood that SB 896 could cause an increase in the number of appeals in misdemeanor cases. However, the history clearly demonstrates that any such increase would be attributed to the expansion of the scope of review of sentences in appeals involving misdemeanors. Thus, defendant's reliance on that history to conclude that the legislature intended to permit defendants who plead guilty or no contest to challenge their convictions on appeal is misplaced.

The foregoing analysis demonstrates that defendant's proposed reading of "conviction" in ORS 138.105(5) to mean "finding of guilt" is untenable when the text is examined in context and in light of its legislative history. We conclude that the legislature intended the term "conviction" to refer to the trial court's judgment—that is, the

judicial determination of guilt as reflected in the judgment entered on the plea, which encompasses intermediate trial court rulings that led to the entry of the judgment containing that judicial determination. Accordingly, we further conclude that the legislature intended for ORS 138.105(5) to preclude a defendant who has pleaded guilty or no contest from obtaining appellate review of legal challenges to the conviction in the judgment entered in the trial court.

### III.   CONSTITUTIONAL CHALLENGES

That brings us to defendant's final contention—*viz.*, that "interpreting ORS 138.105(5) to preclude review in this case would render the statute unconstitutional" under the state and federal constitutions, and that, to avoid such a constitutional problem, we should adopt her construction of ORS 138.105(5). *See State v. Kitzman*, 323 Or 589, 602, 920 P2d 134 (1996) ("[W]hen one plausible construction of a statute is constitutional and another plausible construction of a statute is unconstitutional, courts will assume that the legislature intended the constitutional meaning."). We turn first to defendant's arguments concerning the state constitution. *See Sterling v. Cupp*, 290 Or 611, 614, 625 P2d 123 (1981) ("The proper sequence is to analyze the state's law, including its constitutional law, before reaching a federal constitutional claim.").

### A.   *Oregon Constitution*

Relying on Article VII (Amended), section 3,[7] defendant contends that "the legislature can control how a party initiates an appeal, but it cannot limit the court's powers

---

[7] Defendant's arguments are based primarily on the second and third sentences of Article VII (Amended), section 3, which provide:

"[2] Until otherwise provided by law, upon appeal of any case to the supreme court, either party may have attached to the bill of exceptions the whole testimony, the instructions of the court to the jury, and any other matter material to the decision of the appeal. [3] If the supreme court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial; or if, in any respect, the judgment appealed from should be changed, and the supreme court shall be of opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered in the same manner and with like effect as decrees are now entered in equity cases on appeal to the supreme court."

and duties on appeal" and that appellate courts have "the power and duty to review the lawfulness of trial court judgments whenever the legislature has authorized a party to appeal the judgment." According to defendant, "[t]he distinction between appealability and reviewability is key":

> "When the legislature makes decisions about appealability, its power over the appellate process is at is greatest—it alone decides whether to authorize a party to appeal. A dispute about whether a particular judgment or order should be appealable is a dispute between the legislature and the party who wishes to appeal, not the judiciary.
>
> "But when the legislature makes decisions about reviewability, its power is at its weakest—it is limiting the power of the court to adjudicate a case that is properly before the court. A dispute over whether an appellate court should affirm or reverse a judgment is a dispute between the parties and the court, in which the legislature should have little or no role."

However, as we will explain, defendant's argument rests on a faulty premise—namely, that the right to appeal a judgment or order implicates only appealability.

Contrary to defendant's position, in *State v. Nix*, 356 Or 768, 772, 345 P3d 416 (2015), we explained that the right to appeal, which is a legislative prerogative, encompasses both "appealability" and "reviewability":

> "There is no inherent right to an appeal. *State v. McAnulty*, 356 Or 432, 438, 338 P3d 653 (2014)[, *cert den*, 577 US 829 (2015)]. Instead, the right to appeal must be statutorily authorized. *Waybrant v. Bernstein*, 294 Or 650, 653, 661 P2d 931 (1983). The statute authorizing an appeal may include limitations on the issues that may be reviewed in an appeal. *Logsdon v. State and Dell*, 234 Or 66, 70, 380 P2d 111 (1963)."

*See also State v. Endsley*, 214 Or 537, 546, 331 P2d 338 (1958) ("'The legislature *** has the power to define in what cases, and under what circumstances, and in what manner, an appeal may be taken to this court.'" (Quoting *City of Portland v. Gaston*, 38 Or 533, 535, 63 P 1051 (1901)). Before the enactment of SB 896, statutes authorizing an appeal often governed both "appealability" and "reviewability," and

the grants were often coextensive. The legislature's decision in SB 896 to express those concepts in more than one statute does not affect the long-standing principle that the legislature may limit the issues that a court may review on appeal.

Defendant further contends that Article VII (Amended), section 1, in providing that "[t]he judicial power of the state shall be vested in one supreme court and in such other courts as may from time to time be created by law," thus prohibits legislative limitations on reviewability because such statutes "interfere[] with the judiciary in a manner which prevents or obstructs the performance of its irreducible constitutional task, adjudication." *Circuit Court v. AFSCME*, 295 Or 542, 550, 669 P2d 314 (1983). In *AFSCME*, however, we explained that "[t]here can be no question that the legislature may enact laws prescribing the exercise of judicial powers." 295 Or at 549. "Only an outright hindrance of a court's ability to adjudicate a case" or "the substantial destruction of the exercise of a power essential to the adjudicatory function will prompt an [A]rticle VII, section 1[,] violation." *Id.* at 551 (internal citations omitted). We do not understand ORS 138.105(5) to affect the court's adjudicative function. The limits on review in that statute affect *what* issues the court is authorized to review, not *how* the court may resolve them. *Cf. City of Damascus v. State of Oregon*, 367 Or 41, 68-69, 472 P3d 741 (2020) (declining legislature's instruction to decide reviewable issues in a particular order). Although defendant is correct that an appellate court will "affirm" a judgment to the extent that an issue is unreviewable, that reflects nothing more than the court's understanding of the proper disposition when an issue is not within the scope of review on appeal. Thus, we conclude that ORS 138.105(5) does not violate the Oregon Constitution as defendant contends.

B.   *United States Constitution*

Defendant also contends that, if ORS 138.105(5) bars review of a decision to terminate diversion, the statute violates the Fourteenth Amendment to the United States Constitution, which provides that "[n]o State shall *** deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction

the equal protection of the laws." We have considered defendant's arguments and reviewed the cases she has cited in support of them. Ultimately, defendant has not presented a sufficiently well-developed argument to persuade us that the statute is unconstitutional.

## IV. CONCLUSION

We have examined the text of ORS 138.105(5) in context—which included a comprehensive review of the pre-existing common law and statutory framework within which the statute was enacted—along with the statute's legislative history. Having done so, we conclude that ORS 138.105(5) precludes a defendant who pleads guilty or no contest from obtaining appellate review of legal challenges to the "conviction" in the judgment entered in the trial court. As used in that statute, the term "conviction" refers to the trial court's judgment—that is, the judicial determination of guilt as reflected in the judgment entered on the plea, which encompasses intermediate trial court rulings that led to the entry of the judgment containing that judicial determination.

The practical effect of the reviewability bar in ORS 138.105(5) will vary depending on context. In the context of DUII diversion, ORS 138.105(5) precludes a defendant from obtaining direct appellate review of legal rulings made during the lengthy post-plea diversion process. However, it appears that, if a trial court dismisses a defendant's DUII charge, the state is permitted to appeal and obtain review of the court's post-plea rulings that led to the dismissal. This case highlights that distinction, which appears to be a function of the interrelationship between the DUII diversion scheme and the law governing criminal appeals. The inability of a defendant to obtain direct appellate review of a trial court's post-plea legal decisions during the DUII diversion process is curious, particularly when the legislature has enacted a detailed statutory scheme that affords DUII defendants various rights and, in some circumstances, imposes duties on the trial courts. Now that the practical interrelationship between the DUII diversion scheme and the law governing criminal appeals is clearly in focus, the legislature, if it chooses to do so, can revisit and recalibrate its enactments and permit defendants who plead guilty or

no contest to DUII to challenge on direct appeal the legal rulings that were made as part of the post-plea diversion process as long as the law that it enacts is consistent with any limits imposed by state and federal law.

The decision of the Court of Appeals is affirmed. The circuit court's judgment of conviction is affirmed in part and vacated in part, and the case is remanded to the circuit court for further proceedings. The circuit court's judgment for the costs of appointed counsel is reversed.