Argued March 5, reversed and remanded March 25, 1919.

## LAWRENCE *v*. PORTLAND RY. L. & P. CO.

(179 Pac. 485.)

**Customs and Usages—"Custom"—Uniformity.**

1. One of the essential requirements of a custom, meaning a practice so uniform as to become a law, is that it shall be invariably the practice.

**Carriers—Injuries to Passengers—Common Practices—Boarding Moving Cars.**

2. Evidence that it was a common practice, although not a custom in a technical legal sense, for street railway men to slow down cars, with a tacit invitation to male passengers to get aboard while the train was still moving, and when the passenger had done so to speed up again, was admissible in an action for damages by one who attempted to board a moving train, and was injured by reason of a sudden increase in speed.

**Carriers—Passengers—Street Railways—Duty to Stop—Instruction.**

3. In an action by one injured while attempting to board a moving street-car, an instruction regarding duty of trainmen to stop car and

give passengers opportunity to board *held* defective, in that it failed to assume that street railway knew of plaintiff's desire to become a passenger, or had in any manner signified its acceptance of his offer to become a passenger.

[As to duty of railroad company to have its train wait at passenger station at times advertised, see note in 66 **Am.** Dec. 603.]

### Trial — Passengers—Street Railways—Duty of Care—Instructions—Province of Jury.

4. In action against a street railway, it was not error to refuse to instruct that degree of absolute care which a motorman owes a child about to board his car is "far greater" than that due an adult, it always being for jury to determine degree in any particular case.

### Negligence—Contributory Negligence—Infants.

5. A child is not to be held to the same degree of care as an adult, but he must exercise only that degree of care commensurate with his age, experience, and understanding, and, unless he fails to exercise commensurate care, he is not guilty of contributory negligence.

### Trial—Instructions—Issues.

6. In action by a passenger injured while boarding a slowly moving street-car, where all evidence showed that defendant slowed down its car for purpose of receiving plaintiff as a passenger, it was error to instruct that no negligence could be imputed to defendant merely because it did not stop its car at regular stopping place.

### Witnesses—Cross-examination.

7. A plaintiff, on cross-examination of defendant's witnesses, is not for the purpose of making out his own case, entitled to ask questions concerning a subject not referred to in the direct examination of the witness.

### Witnesses—Cross-examination—Repetition.

8. Where, on cross-examination, witness had already been asked and had fully answered same question twice, it was not error for court to sustain objection to its repetition.

From Multnomah: Edwin V. Littlefield, Judge.

Department 1.

This is an action for damages for personal injuries received by the plaintiff in boarding a street-car at the intersection of Killingsworth Avenue and Delaware Street, in Portland. The complaint alleges, in substance, that the plaintiff took his station at a regular stopping place for receiving and discharging passengers, and as the train approached, it slowed down for the purpose of allowing plaintiff to board it; that when it reached the point where plaintiff was standing, it

had slowed down to a speed of three or four miles an hour, but had not stopped, and plaintiff realizing that the car was passing, caught hold of the rear end of the front car and was in the act of boarding the same, when "the defendant carelessly and negligently jerked and started said car in a quick and abrupt manner, throwing plaintiff violently upon the street and under the wheels of the rear car, and injuring him as hereinafter alleged."

It is further averred that defendant

"carelessly and negligently failed to stop said car to allow the plaintiff to get aboard, and carelessly and negligently jerked and started said car in a violent and abrupt manner when plaintiff was attempting to get aboard same; that said defendant knew that plaintiff was attempting to board its car, which he was doing with defendant's knowledge and consent, but it carelessly and negligently failed to give the plaintiff sufficient time to do so."

There is a further allegation to the effect that it is the usual and customary practice of the defendant not to bring its car to a complete standstill at that particular point for the purpose of receiving male passengers, but that it usually slows down the car to a speed of from three to five miles, expecting the passengers to board the car under such circumstances, while the car is in motion.

The answer denies the allegations of negligence, and pleads affirmatively that the accident occurred by reason of the negligence of the plaintiff, and his reckless disregard for his own safety in that he attempted to board the train while it was in motion.

The reply denies the affirmative averments of the answer.   There was a trial by jury, resulting in a verdict and judgment for defendant, and plaintiff appeals.

Reversed and Remanded.

For appellant there was a brief over the names of *Mr. J. G. Arnold, Mr. E. O. Stadter* and *Mr. Henry Bauer,* with an oral argument by *Mr. Arnold.*

For respondent there was a brief over the names of *Messrs. Griffith, Leiter & Allen,* and *Mr. Frank J. Lonergan,* with an oral argument by *Mr. Lonergan.*

BENSON, J.—The first assignment of error upon which plaintiff relies, is that the court gave the jury an instruction to the effect that there was no legal evidence in the case of a custom on the part of the defendant *to slow down* its cars at that crossing without coming to a full stop, for the purpose of receiving or discharging male passengers. Plaintiff introduced the testimony of several witnesses upon this subject, including that of the plaintiff and his father and mother. None of these witnesses testified that the alleged custom was invariably practiced. They all said that sometimes the car merely slowed down without stopping completely, and that sometimes it did come to a full stop. Some witnesses said that it seldom attained an entire cessation of movement. The plaintiff and his father each testified that when a prospective passenger declined to board the car while it was in motion, the motorman would stop the car a short distance beyond the crossing and wait for the passenger to get into the car. The conductor and the motorman testified that it was their practice to bring the train to a full stop to receive or discharge passengers, and that this practice never varied except in instances when the passenger, of his own volition, jumped on or off of the car before its motion had ceased.

If the word "custom" be held to mean a practice so uniform as to become a law, binding upon the defend-

ant and its employees, then the instruction is a correct statement as applied to the evidence in this case, since one of the essential requirements of such a custom is, that it shall be invariably the practice: *Chicago, M. & St. P. Ry. Co.* v. *Lindeman,* 143 Fed. 946 (75 C. C. A. 18); *Moffitt* v. *Connecticut Co.,* 86 Conn. 527 (86 Atl. 16). The latter case is cited by plaintiff in support of his theory. This was a case in which one of the disputed questions of fact was: Did the car stop on the north or the south side of the street? Defendant offered evidence to the effect that the regular stopping place was on the south side, where two white poles indicated the stopping place. The plaintiff objected on the ground that proof of the place of stopping at other times is not admissible as tending to disprove plaintiff's contention that the car did in fact stop at the north corner at the time in question; that negligence of a motorman existing at one time, cannot be disproved by proof of careful conduct at other times. In commenting upon this point, the court says:

"In the ordinary affairs of life in a conflict over a matter of fact between two persons, men would regard the fact that one of the persons was in duty bound to act under a certain rule which was equally obligatory upon a number of men and important in the prosecution of a *quasi* public business, as some evidence in support of his contention that he in fact acted under the rule. It would be thought to make more probable his claim. An evidential fact which men generally would act upon in the affairs of their life will logically aid in determining a legal issue, and ought to be held legally relevant and of probative value. * *

"If this offer be held in reality to be an attempt to prove the practice of the defendant in stopping its cars in accordance with its rule, it would still be admissible. We should then have a systematic and invariable regularity of conduct upon the part of a large body of opera-

tives; and such a course of conduct would tend to prove the custom of the defendant to stop its cars at the particular point designated by the rules."

In the case at bar, it will be noted that the evidence of the plaintiff affirmatively establishes the fact that the alleged practice was not invariable, nor so continuous as to establish a law of action. However, there is another sense in which the word "custom" is frequently used, which is not affected by the doctrine referred to, in that it refers to a habit or practice of doing a certain thing in a certain way, which may, under a given state of facts, have some probative value in determining whether or not a person was acting in harmony with such practice or habit on a particular occasion. A very interesting discussion of this distinction will be found in the case of *Fritz* v. *Western Union Tel. Co.*, 25 Utah, 263 (71 Pac. 209).

Upon the same subject, we find this doctrine enunciated in 10 C. J. 1054, as follows:

"Where, in the absence of any question of evil intent or of any intent at all, the point of fact to be determined is whether or not the passenger or the carrier did a certain thing or did it in a particular way, and the direct testimony as to the fact is conflicting, evidence is admissible to show that the one or the other was in the habit of doing the thing in question, or accustomed to do it in a particular way."

2. Now, in the case at bar, the plaintiff and his witnesses say that the defendant's employees slowed down the train for the purpose of enabling him to board the car while in motion, and suddenly accelerated the speed before he had reached a place of safety. The defendant and its witnesses say that they began to stop the train as soon as they discovered that plaintiff wished to become a passenger, and instead of increas-

ing the speed thereafter, they brought the cars to a full stop as speedily as practicable. This, then, was the vital issue. If it was a fact that it was a common practice for the trainmen to slow down the cars, with a tacit invitation to male passengers to get aboard while the train was still moving, and when the passenger had done so, to speed up again, would that fact have any logical tendency to prove that such was their course of conduct on the specific occasion in controversy? We think that it would, and that it was error to withdraw such evidence from consideration by the jury.

3. It is then urged that it was error to refuse the following instruction, which was requested by the plaintiff:

"I instruct you that if you find that plaintiff at the time of his injury was at a regular stopping place for taking on passengers, then defendant owed him a duty to stop its car and give him a reasonable opportunity to reach a place of safety on the car before starting it again, and the failure of the defendant company to exercise the highest practical care in this regard, or in the manner of starting the car, is negligence."

This statement of the law is defective, in that it fails to assume that the defendant knew of his desire to become a passenger, or had in any manner signified its acceptance of his offer to become a passenger. All of the cases cited by plaintiff either specify these additional elements, or recite) facts in which they are necessarily involved.

4. It is also contended that it was error for the court to refuse plaintiff's request for instructions as to the relation of plaintiff's infancy, both to the duty of the plaintiff in its exercise of care in receiving him as a passenger, and as to the degree of care exacted by law

from the plaintiff in protecting himself from injury. The instructions referred to, are as follows:

(a) "I instruct you that although a motorman is bound to exercise reasonable care under the circumstances in all cases, the degree of absolute care which he owes a child about to board his car is far greater than that due an adult."

(b) "You are instructed that a child is not to be held to the same degree of care as an adult, but he must exercise only that degree of care commensurate with his age, experience and understanding, and that unless he fails to exercise commensurate care, he is not guilty of contributory negligence."

The first of these was properly refused, because of the erroneous statement that the absolute care demanded of the motorman in his dealing with a child is *far* greater than that due an adult. It may be conceded that the degree of care required in such a case is greater, at least in many instances, but it is always a question for the jury to determine the degree, in the particular case, and not for the court.

5. The latter request is a correct statement of the law. This court has frequently held that what would be negligence in an adult, would not necessarily be negligence in a child, and that an infant is to be charged with that degree of care only, which might be reasonably expected, considering his age and capacity: *Wallace* v. *Suburban Ry. Co.,* 26 Or. 174 (37 Pac. 477, 25 L. R. A. 663); *Schleiger* v. *Northern Terminal Co.,* 43 Or. 4 (72 Pac. 324); *Ahonen* v. *Hryszko,* 90 Or. 451 (175 Pac. 616). The defendant pleads the negligence of the plaintiff and offered evidence in support of the plea. This instruction was therefore pertinent, and its refusal was error.

6. It is also urged that the court erred in instructing the jury as follows:

"The court instructs you further that in so far as this case is concerned no negligence can be imputed to the defendant merely because the defendant did not stop its cars at the regular stopping place, for, as far as this case is concerned, it would not have been negligence on the part of the defendant if it had not slowed up or stopped its cars at Delaware street at all."

There was no evidence in the record to justify the giving of this part of the charge. The defendant, according to all of the evidence, did slow down its cars, for the purpose of receiving the plaintiff as a passenger, and according to defendant's witnesses actually stopped its cars at the earliest practicable moment. Therefore, the instruction should not have been given.

7. The remaining assignments of error challenge the correctness of the court's action in sustaining objections to two questions asked by plaintiff's attorney in cross-examination of defendant's witnesses. The first of these is as follows:

"Q. But, as a matter of fact, many boys and men had got off before—off and on, without you stopping?"

This question, it will be observed, is directed to the subject of plaintiff's allegation in regard to the custom of defendant's employees to slow down the cars to take on male passengers without making a full stop. No reference to this subject had been made in the direct examination of the witness, and so far as it was any value in the case at all, it was a part of plaintiff's case, and therefore not proper cross-examination.

8. The second question in regard to which error is charged, was this:

"Q. How far do you say it takes a car to stop in an emergency stop, at this place, going at four or five miles an hour?"

The court sustained an objection to this. It is sufficient answer to plaintiff's contention to say, that the question and answer immediately preceding this one, read thus:

"Q. When the car is going four or five miles an hour, at this particular place, in an emergency stop, you can stop in five or six feet, can't you?

"A. Going at four or five miles an hour, I think we could.

"Q. You can stop in five, six or seven feet?

"A. I think we could."

The witness had already been asked, and had fully answered the same question twice, and the court did not commit any error in sustaining an objection to its repetition.

The judgment is reversed, and the cause remanded for a new trial.          REVERSED AND REMANDED.

McBRIDE, C. J., and BURNETT and HARRIS, JJ., concur.