Argued May 4, reversed and remanded June 17, 1964·

# HEVEL ET AL v. STANGIER ET AL
### 393 P. 2d 201

*Thomas H. Tongue,* Portland, argued the cause for appellants. With him on the briefs were Isaminger & Hanzen and William E. Hanzen, Pendleton, and Hicks, Davis, Tongue & Dale, Portland.

*Alex M. Byler* and *George H. Corey,* Pendleton, argued the cause for respondents. On the briefs were Corey & Byler and Lawrence B. Rew, Pendleton.

Before McALLISTER, Chief Justice, and ROSSMAN, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

GOODWIN, J.

This is an action for damages for the destruction of a building.

Plaintiffs and defendants were the owners of adjoining business buildings in Pendleton. The building owned by the defendants was gutted by fire. A three-story brick wall was left standing between the two

buildings. During a windstorm thirty-three days after the fire, the wall collapsed upon the one-story building of the plaintiffs and inflicted extensive damage.

In this action, the plaintiffs alleged that the negligence of the defendants caused the destruction of the one-story building. The cause was tried to a jury which returned a verdict for the defendants. The plaintiffs appeal from the resulting judgment.

The wall between the two buildings was seventeen inches thick. Six inches of the thickness of the wall was upon the land of the plaintiffs. The remainder stood on the land of the defendants. The plaintiffs owned an interest in the wall described as six seventeenths of the wall to a height of twenty feet and extending along sixty feet of the wall. The wall was 48 feet high and 100 feet long.

A jury could have found that after the fire the wall was so weakened that it constituted a hazard to adjoining property, and that the hazard was known to all the parties concerned. The jury also could have found that the actual cause of the collapse of the wall was the combination of its weakened condition after the fire and the force of the wind at the time of the collapse.

The plaintiffs charged negligence in several particulars. These may be summarized under two general headings: failure to take proper measures to prevent the wall from falling upon the plaintiffs' land, and failure to proceed with due diligence toward the removal of the wall.

The defendants denied the allegations of negligence and alleged three affirmative defenses. The first defense was that the plaintiffs were estopped to complain of negligence; the second defense was that the plain-

tiffs were contributorily negligent in failing to shore up their side of the wall; and the third defense was that the sole cause of the plaintiffs' damage was an act of God. These affirmative defenses were submitted to the jury. Their submission is assigned as error.

The affirmative defense of estoppel alleges that the plaintiffs saw the manner in which demolition work was being conducted by the defendants and made no protest. Then follows the conclusion that "the plaintiffs are now estopped from claiming or asserting that said work was negligently done."

The facts relied upon by the defendants do not support the defense of estoppel. It is conceded that the plaintiffs had an opportunity to observe the work being done next door by the contractor who had been employed by the defendants to clear away the debris after the fire. It is also conceded that the plaintiffs did not voice their alarm, if they had any, concerning the manner in which the work was being done.

■ In this case, however, the plaintiffs had no duty to speak. It is clear from the record that the plaintiffs had no interest in the portion of the wall which extended above their building. No element of estoppel was present. For the elements of estoppel, see *Pilloud et ux v. Linn-Benton Park Ass'n*, 228 Or 324, 329-330, 365 P2d 116 (1961); *First National Bank v. Stretcher*, 169 Or 532, 538, 129 P2d 830 (1942).

It was error to submit to the jury an answer which contained a defense of estoppel without informing the jury that the allegation was to be disregarded. Since we cannot say the error was of the sort that would not be likely to produce confusion in the minds of jurors, it was reversible.

■ It was also error to submit to the jury the defense of contributory negligence. The wall was a party wall for only a portion of its length and for approximately one half of its height. The plaintiffs had a duty within the terms of the party-wall agreement to preserve only the portion of the wall in which they had an interest. The plaintiffs had no duty to shore up the portion of the wall that extended above the plaintiffs' building. Whatever duty the plaintiffs had with reference to the maintenance of the wall was limited to the lower twenty feet thereof. See *Beidler v. King,* 209 Ill 302, 312, 70 NE 763, 766-767 (1904). There was no evidence that a failure on the part of the plaintiffs to act with reference to their portion of the wall was causally related to the collapse of the upper half of the wall. Upon the record made in the court below, therefore, it was error to submit to the jury the defense of contributory negligence. We need not decide in this case whether the fire ended the party-wall agreement for all purposes. See *Odd Fellows' Association v. Hegele,* 24 Or 16, 32 P 679 (1893); 34 Or L Rev 184. It is clear that no contributory negligence was proven in the case at bar.

■ Error is also assigned to the submission of the question presented by the third affirmative defense, i.e., that the sole cause of the damage was an unusual wind, or an act of God. This assignment of error is without merit. There was a sharp conflict in the evidence concerning the velocity of the wind reasonably to be expected at the time and place in question. See *Schweiger et ux. v. Solbeck et ux.,* 191 Or 454, 230 P2d 195, 29 ALR2d 435 (1951).

■ The plaintiffs during the trial requested an instruction to the effect that the defendants could not lawfully avoid liability for harm resulting from re-

moval of the wall by delegating the demolition to an independent contractor. The instruction should have been given.

"* * * An owner cannot, by contracting with an independent contractor for the removal of a weakened wall, relieve himself of liability for injury to adjoining premises caused by such operations, even though by the contract full responsibility is assumed by the contractor. The work, being considered inherently dangerous, is an exception to the general rule regarding independent contractors, and any negligence on the part of the workmen may be imputed to the property owner * * *." 1 Am Jur2d 705, Adjoining Landowners § 21, citing Annotation, 23 ALR 1016 at 1042.

In this appeal, the plaintiffs for the first time are asking for more than the application of the foregoing rule governing vicarious liability where someone is at fault. They are now contending that they were entitled to an instruction on liability without fault. Since the case must be tried again, we will answer this contention so that it will not be a source of difficulty at the new trial.

Assuming that the demolition project was such a hazardous activity as to make the landowners liable both for their own negligence and for that of their contractor if harm should be caused by the demolition, it does not follow that the case also calls for a rule of absolute liability.

■ At some point in time, an owner of a hazardous burned-out building becomes liable for a failure on his part to exercise reasonable care in causing the removal of the hazard. But in the absence of statute, where reasonable minds can differ, the jury, rather than the court, should fix that time. In this case, various state and city officials whose duties brought

them into consultation with the owners and with the demolition contractor testified that the work appeared to be proceeding at a satisfactory pace. This evidence, together with all the other evidence in the case, was for the jury to evaluate. This was not, therefore, a case for the peremptory instruction on absolute liability that is now being requested by the plaintiffs.

The rule is different when a landowner voluntarily undertakes an extrahazardous activity, such as intentionally setting a fire, impounding water, using explosives, or keeping wild animals. See *Loe et ux v. Lenhard et al*, 227 Or 242, 362 P2d 312 (1961). But here the defendants did not voluntarily undertake an extrahazardous activity. The evidence was that they were more or less busy extricating themselves from a hazard that was forced upon them. Whether the defendants acted with due care in all the circumstances was a jury question.

Reversed and remanded.