Argued September 9, affirmed October 23, 1968

# VAN DER HOUT, *Appellant, v.* JOHNSON, *Respondent.*

446 P. 2d 99

*Ray G. Brown,* Portland, argued the cause and filed briefs for appellant.

*James H. Clarke,* Portland, argued the cause for respondent. With him on the brief were McColloch, Dezendorf & Spears, and Wayne Hilliard.

Before PERRY, Chief Justice, and SLOAN, GOODWIN, HOLMAN and LUSK, Justices.

LUSK, J.

Plaintiff appeals from a judgment for the defendant based on a jury verdict in an action to recover damages for personal injuries.

The defendant is the administrator of the estate of Pierre Scott Johnson, deceased, who died of a heart attack shortly after an accident in which the plaintiff, Michael van der Hout, then ten years of age, was injured, allegedly as the result of the negligence of the deceased in the operation of his automobile.

The facts are unusual. The accident occurred on June 10, 1966, in the afternoon at the northeast corner of Sandy Boulevard and 33rd Avenue in Portland.

The deceased, hereinafter referred to as Johnson, had been parked in his automobile headed east on the south side of Sandy Boulevard—an east and west street—some 300 feet west of the intersection. He pulled away from the curb, struck a glancing blow on a car parked a car length or two ahead of him and proceeded diagonally across Sandy Boulevard in the lane of opposing traffic to the northeast corner of the intersection at a speed of 35 to 40 miles an hour. His car jumped the curb, crashed into a Green Stamp Store on the corner and struck the plaintiff, who was standing on the sidewalk looking at a new bike in the store. The plaintiff was seriously injured.

An ambulance was called to take Johnson to the hospital, but he died enroute. The autopsy report showed that the cause of death was "atherosclerosis and thrombosis of a coronary artery of the heart."

At the conclusion of the evidence plaintiff moved the court to direct the jury to return a verdict for the plaintiff on the grounds that res ipsa loquitur applied and defendant had failed to show that Johnson was unconscious, or that in any other respect the accident was due to a condition over which he had no control; and that the evidence was conclusive that Johnson "had knowledge for a considerable period of time that he had heart problems."

The court denied the motion and the ruling is assigned as error.

The court instructed the jury:

"I instruct you that one, who while driving an automobile is suddenly overcome by illness, such as a heart attack, or becomes unconscious and thereby loses control of his automobile without having had any reason to believe that he was about to be overcome is not chargeable with negligence.

> "In this connection you must find by a preponderance of the evidence that such sudden illness or loss of consciousness, if there was such, came over the deceased Johnson immediately prior to the occurrence in question and that the deceased Johnson had no reason to believe as a reasonably prudent person that he might experience such a loss of consciousness or sudden illness while operating his automobile."

■ No exception was taken to these instructions by the plaintiff. In fact, the instructions were substantially in the language of a request submitted by the plaintiff. Nevertheless plaintiff in this court has argued that strict liability should be imposed for violation by Johnson of various provisions of the Motor Vehicle Code. To do so would not only run counter to established law in this jurisdiction, *Pozsgai v. Porter,* 249 Or 84, 435 P2d 818, but would allow the plaintiff to prevail on a theory contrary to that on which he relied in the court below.

■ The instructions quoted above correctly embody the applicable law as stated in 28 ALR2d 12, 35:

> "By the great weight of authority, an operator of a motor vehicle who, while driving, becomes suddenly stricken by a fainting spell or loses consciousness from an unforeseen cause, and is unable to control the vehicle, is not chargeable with negligence * * *."

*Whelpley v. Frye, Adm'x,* 199 Or 530, 537, 263 P2d 295, and *LaVigne v. LaVigne,* 176 Or 634, 637, 158 P2d 557, are in accord.

■ Plaintiff argues that the rule as stated in ALR is without application here because there is no evidence that Johnson "fainted" or was "unconscious" before the accident. The reason of the rule, however, applies

just as strongly to a case of sudden illness which incapacitates the driver of an automobile as to a case of fainting or unconsciousness. Plaintiff recognized this by his requested instructions. This court also recognized it in *Whelpley v. Frye, Adm'x,* supra.[1] As Chief Justice Wilkins said in *Carroll v. Bouley,* 338 Mass 625, 627, 156 NE2d 687: "By the great weight of authority a sudden and unforeseeable physical seizure rendering an operator unable to control his motor vehicle cannot be termed negligence."

■ There is substantial evidence that Johnson sustained a heart attack prior to the accident which disabled him from controlling his automobile. That question was submitted to the jury in the above-quoted instructions and was decided by the verdict of the jury contrary to the contention of the plaintiff. The remaining question is whether Johnson had knowledge of a heart condition such that it would have been negligence for him to drive an automobile at all. This, also, was a jury question.

Johnson was a machinist by trade. On March 16, 1966, he consulted Dr. Franklin Arthur Trostel, an osteopathic physician and surgeon, complaining that he had become very short of breath while changing a tire. Dr. Trostel found from his examination evidence of fluid in the bottom of the patient's lungs. He concluded that Johnson "was experiencing what we refer to as early congestive heart failure, which is a condition in which the heart, which is a normally efficient pump, loses its ability to circulate blood efficiently. Thereupon, some back pressure occurs and the fluid

[1] "The crucial question in this case was how long in time did death precede the collision. Was Gerald Frye dead or suffering an incapacitating heart attack when his car started its gradual turn to the left side of the road? If so, he could not be found guilty of negligence on that account." **199 Or at 537.**

builds up in the lungs, resulting in a decrease in the space that he uses for breathing." He gave the patient diuretic medication which stimulates the excretion of fluid. Eight days later when the doctor saw Johnson again he felt much better. There was just a "little bit of evidence of fluid remaining." The doctor prescribed digitalis, which stimulates the heart muscles. Three days after that Johnson returned again at the doctor's request. His heart rate was then normal and there was no evidence of fluid in the lungs. On June 1, 1966, Johnson saw Dr. Trostel and complained of chest pains when he engaged in strenuous exercise. His heart and blood pressure were normal. The pain was described as angina, "which is caused by the muscle of the heart not getting sufficient circulation to provide oxygen." The doctor prescribed a coronary vasodilator "to relax the muscle or vessels, to improve the circulation to the heart itself," and one week later Johnson reported to the doctor that he was free of pain while taking the pills, that he had been working in his garden and doing strenuous work without pain. The doctor advised him to continue with the coronary vasodilators and asked him to come back to pick up some medication. On June 10, the day of the accident, Johnson returned for the medication. He had been working and was feeling fine and the doctor felt no examination was necessary. Mrs. Genevieve Seibert, Doctor Trostel's medical assistant, and a personal acquaintance of Johnson for about 10 years, testified that on that day Johnson was very happy and cheerful, talked about some acreage he had bought and about putting in a garden, and gave no indication whatever of being in discomfort or pain. Less than 45 minutes after Johnson left the doctor's office the accident occurred.

Dr. Trostel placed no limitation on Johnson's driv-

ing and Dr. William J. Brady, Coroner of Multnomah County, expressed the opinion that there was no reason for him to have done so. He testified:

> "A Mr. Hilliard, just based on the autopsy, we have a gentleman here who has heart disease, hardening of the arteries, and a plug. I wouldn't restrict his activity in an automobile, no, because an enormous number of people have survived for long periods of time with heart attack as severe or perhaps even more severe than the one that killed Mr. Johnson. Why one kills one and not another, we don't know for sure. * * *"

In the face of the foregoing evidence it would have been error for the judge to have instructed the jury that the heart attack which precipitated Johnson's loss of control of his automobile and the resulting unfortunate injuries to the plaintiff, was foreseeable by Johnson. Illustrative cases supporting this conclusion are: *Carroll v. Bouley,* supra; *Keller v. Wonn,* 140 W Va 860, 87 SE2d 453 (where the court held no foreseeability as matter of law); *Porter v. Price,* 11 Utah 2d 80, 355 P2d 66.

■■ The plaintiff assigns error to the court's ruling which sustained defendant's objection to the following question addressed on cross-examination to Dr. Brady:

> "Q * * * Do you feel that it is probable that Mr. Johnson didn't have his heart seizure until after the second collision?"

The ground of the ruling was that the question was repetitious. Previously the witness, on direct examination, had stated his opinion that the heart attack occurred prior to the second collision when the plaintiff was struck by the automobile. He repeated that testimony on cross-examination. Four questions later

he was asked the question objected to. As part of the discretion of the trial judge to control within reasonable limits the course and conduct of the trial, he may properly restrict the needless repetition of testimony: *Lawrence v. Portland Ry. L. & P. Co.,* 91 Or 559, 567-568, 179 P 485. Nothing in the record indicates that the witness' answer to the question would differ from his previous testimony upon that subject or that counsel had any ground for assuming that it would. The question came in the course of a searching cross-examination which occupies 20 pages of the transcript, much of it devoted to an unsuccessful attempt to support plaintiff's theory that the heart attack was caused by the accident in which the plaintiff was injured. We find no error in the ruling.

■ Finally, error is assigned to the giving of an instruction which advised the jury that negligence of a party to an action is never presumed. Plaintiff contends that the instruction was contradictory of another by which the court told the jury, in effect, that res ipsa loquitur applied to the case. Res ipsa loquitur means nothing more nor less than that there is circumstantial evidence of negligence. But the fact that there is evidence of negligence—whether direct or circumstantial—cannot be urged as a reason for withholding the instruction on the presumption of ordinary care. If that were so, the instruction should never be given, for a case never gets as far as the charge to the jury if there is no evidence of negligence. The assignment of error is without merit.

The judgment is affirmed.