No. 816          September 17, 2025          445

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Nicholas LOPER,
*Plaintiff-Respondent,*

*v.*

Lindsay BRAKEL,
*Defendant-Appellant,*
*and*

PROGRESSIVE INSURANCE
CORPORATION, INC. et al.,
*Defendants.*

Multnomah County Circuit Court
20CV39371; A182775

Amy M. Baggio, Judge.

Argued and submitted May 21, 2025.

Thomas M. Christ argued the cause for appellant. Also on the briefs was Sussman Shank LLP.

Nadia H. Dahab argued the cause for respondent. Also on the brief were Sugerman Dahab and Jane Paulson and Paulson, Coletti Trial Attorneys PC.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

AOYAGI, P. J.

Reversed and remanded.

**AOYAGI, P. J.**

Plaintiff brought this negligence action against defendant after sustaining injuries in a car crash caused by defendant rear-ending plaintiff at a red light. Before trial, plaintiff moved *in limine* to exclude evidence that defendant had a seizure and lost consciousness right before the crash. The trial court granted the motion on the ground that sudden medical emergency is an affirmative defense that defendant waived by not pleading it in his answer—and denied amendment of the answer as untimely. Given those rulings, defendant admitted liability, after which a jury awarded damages to plaintiff. Defendant appeals the resulting judgment, assigning error to the motion *in limine* ruling. He argues that sudden medical emergency is not an affirmative defense but encompassed in a general denial of negligence. Based on existing Oregon case law on the relationship between negligence and emergency circumstances, we hold that sudden medical emergency is encompassed in a general denial and need not be pleaded as an affirmative defense. We therefore reverse and remand.

FACTS

In August 2020, plaintiff was stopped at a red light near Klamath Falls when defendant, driving approximately 50 miles per hour, rear-ended him. Plaintiff was seriously injured in the crash. In November 2020, plaintiff filed this negligence action against defendant. The operative complaint alleges that defendant was negligent in "failing to maintain a proper lookout" and "smashing into the rear of a stopped vehicle." Defendant admitted in his answer that an accident occurred and that plaintiff was injured, but he denied the remainder of plaintiff's allegations, including the allegations of negligence. Defendant did not plead any affirmative defenses in his answer.

Trial was set to begin on September 20, 2023. Five days before trial, and within minutes of each other, the parties filed their trial memoranda. As relevant here, defendant stated in his trial memorandum that the evidence would show that he had a seizure and lost consciousness right before the crash, which was an unforeseeable event, and he argued that plaintiff would be unable to prove negligence

under Oregon law as a result. Meanwhile, plaintiff included in his trial memorandum a motion *in limine* to exclude any evidence of "sudden medical incapacity" because defendant had not pleaded it as an affirmative defense. Defendant subsequently filed a written opposition to the motion *in limine*, arguing that loss of consciousness is not an affirmative defense and was covered by his general denial.

The trial court granted plaintiff's motion and excluded any evidence of defendant having a seizure and losing consciousness before the crash. The court agreed with plaintiff that it was a "new matter" that had to be pleaded as an affirmative defense and that defendant had waived it by not pleading it. The court also denied defendant's alternative request to amend his answer at that point.

Given the pretrial rulings, which prevented him from mounting any defense to negligence, defendant admitted liability at trial, and the only issue for the jury was damages. The jury awarded plaintiff over $5.5 million in economic and noneconomic damages. Defendant appeals, assigning error to the motion *in limine* ruling.

## PROCEDURAL ISSUES

We first address plaintiff's argument that defendant "waived the affirmative defense by admitting liability," such that we should not reach the merits of his appeal. Defendant preserved his claim of error by opposing the motion *in limine* in the trial court. *See generally State v. Parkins*, 346 Or 333, 338-41, 211 P3d 262 (2009) (discussing preservation). After losing on that issue, he conceded liability and agreed to a trial on damages only. We are unpersuaded that, in doing so, defendant waived his right to appeal the pretrial ruling. Rather, we agree with defendant that he could accept the pretrial ruling as binding for purposes of trial and adapt his trial strategy accordingly—which in this case meant conceding liability, rather than going through the motions of a liability trial without any way to counter plaintiff's evidence—without abandoning his legal position on the pleading issue or waiving his right to appeal the pretrial ruling and thereby seek to obtain a new trial at which he can put on his evidence.

In arguing for waiver, plaintiff analogizes to the Oregon criminal law principle that a defendant who pleads guilty waives the right to appeal in the absence of an express reservation. *See City of Lake Oswego v. Albright*, 222 Or App 117, 119, 193 P3d 988 (2008). The analogy does not hold, however, because that is a jurisdictional limitation derived from statute. The Oregon Supreme Court has explained that the right to appeal is a legislative prerogative. *State v. Colgrove*, 370 Or 474, 498, 521 P3d 456 (2022). Because no inherent right to appeal exists, "the right to appeal must be statutorily authorized," and "[t]he statute authorizing an appeal may include limitations on the issues that may be reviewed in an appeal." *Id.* (internal quotation marks omitted). For criminal appeals, ORS 138.105 governs what may be reviewed on appeal. ORS 138.105(5) expressly provides that "[t]he appellate court has no authority to review the validity of the defendant's plea of guilty or no contest, or a conviction based on the defendant's plea of guilty or no contest," with two exceptions, one of which is when the defendant reserves the right to appeal an adverse pretrial ruling, ORS 138.105(5)(b).

Plaintiff has not identified any comparable statute for civil appeals, and the only one that we are immediately aware of is ORS 19.245. That statute generally provides that "any party to a judgment may appeal from that judgment," ORS 19.245(1), but it limits appeals of default judgments, consent judgments, and stipulated judgments. *See* ORS 19.245(2) (regarding judgments "given by confession or for want of an answer"); ORS 19.245(3) (regarding stipulated judgments). For example, a party may not appeal a stipulated judgment unless the judgment expressly allows for appeal. ORS 19.245(3). This case does not involve a default, consent, or stipulated judgment. Although defendant admitted liability after receiving the trial court's adverse pretrial rulings, he never consented to entry of a judgment against him, nor was a default or stipulated judgment entered. *See Dept. of Human Services v. L. S. H.*, 286 Or App 477, 483, 398 P3d 1013, *rev den*, 362 Or 94 (2017) (distinguishing, for purposes of ORS 19.245(2), between admitting to an allegation and consenting to a judgment). Absent an Oregon statute limiting defendant's ability to appeal a civil judgment in

these circumstances, plaintiff's analogy to a criminal guilty plea is unpersuasive.[1]

Under Oregon law, parties do not waive their right to appeal a ruling by accepting it for purposes of trial. In *McCathern v. Toyota Motor Corp*, 332 Or 59, 69, 23 P3d 320 (2001), the court explained that, when a trial court allows the admission of evidence over a party's objection, that party "is entitled to treat [the] ruling as the 'law of the trial' and to explain or rebut, if he can, the evidence admitted over his protest," without thereby waiving the right to challenge the evidentiary ruling on appeal. (Internal quotation marks omitted.) The defendant in *McCathern* lost a pretrial motion to exclude an expert witness's files, after which he stipulated to their admission at trial, and the Supreme Court agreed with the defendant that he had not thereby waived his right to challenge the pretrial ruling on appeal. *Id.* at 70. Similarly, in *State v. Phillips*, 298 Or App 743, 744, 450 P3d 54 (2019), *aff'd*, 367 Or 594, 482 P3d 52 (2021), the defendant opposed the admission of certain evidence, but the trial court ruled pretrial that it was admissible, after which the defendant addressed that evidence at trial, and we held that the defendant had not thereby waived his right to challenge the pretrial ruling on appeal.

Applying the same principle here to the reverse situation—exclusion of evidence over defendant's opposition—we see no reason that defendant could not accept the trial court's pretrial ruling as the law of the trial, concede liability because the pretrial ruling left him without the ability to counter plaintiff's evidence of negligence, and proceed to a trial on damages, without thereby waiving his right to challenge the pretrial ruling on appeal. Plaintiff has not identified any statute that limits defendant's right to appeal in such situation, and the situation is not one of invited error. Accordingly, we reject plaintiff's waiver argument and turn to the merits.

---

[1] For similar reasons, a California case cited by plaintiff in support of his waiver argument lacks persuasive value. The question in that case was when a particular stipulated judgment became "final," which depended on whether it was appealable. *Cadle Co. II, Inc. v. Sundance Finan., Inc.*, 154 Cal App 4th 622, 623, 64 Cal Rptr 3d 824, 825 (2007). Because this case does not involve a stipulated judgment—and would be subject to ORS 19.245(3), not California law, if it did—*Cadle* is not relevant.

## LEGAL ANALYSIS

The issue on appeal pertains to the negligence defense of "loss of consciousness," as defendant calls it, or "sudden medical emergency," as plaintiff calls it. We will use the latter for purposes of our discussion, because it is more comprehensive. The question is whether sudden medical emergency is an affirmative defense that must be affirmatively pleaded, as plaintiff argued and the trial court agreed, or, rather, is an ordinary defense that is encompassed within a general denial, as defendant maintains. The issue is one of law, so we review for legal error. *TriMet v. Posh Ventures, LLC*, 244 Or App 425, 435, 261 P3d 33 (2011).

We begin with what is not in dispute. The parties agree, and courts have uniformly held, that a qualifying sudden medical emergency is a complete defense to negligence. *See generally Liability for Sudden Loss of Consciousness While Driving*, 17 Am Jur Proof of Facts 3d § 5 (2025). Specifically, a person who loses consciousness or is overcome by a sudden illness while driving, and causes an accident as a result, cannot be held liable for negligence, so long as they "had no reason to believe as a reasonably prudent person that [they] might experience such a loss of consciousness or sudden illness." *van der Hout v. Johnson*, 251 Or 435, 437, 446 P2d 99 (1968) (internal quotation marks omitted).

What the parties disagree on is whether sudden medical emergency is encompassed within a general denial or, conversely, must be raised as an affirmative defense. The answer to that question determines the pleading requirements, as well as who has the ultimate burden of proof at trial. We begin by examining general principles, then turn to relevant case law, to answer the question.

ORCP 19 A requires a responsive pleading to "fairly meet the substance of the allegations denied." How much specificity is required depends on the nature of the denial. "Under Oregon pleading rules, evidence which controverts facts necessary to be proved by plaintiff may be shown under a general denial." *Deering v. Alexander*, 281 Or 607, 613, 576 P2d 8 (1978). A "general denial puts in issue every fact included within the allegations of the petition which the

plaintiff is bound to prove in order to recover, and so, any fact which goes to destroy, not to avoid, the plaintiff's cause of action, is provable under the general denial." *Hubbard v. Olsen-Roe Transfer Co.*, 110 Or 618, 627, 224 P 636 (1924) (internal quotation marks omitted). A general denial is the civil equivalent of pleading "not guilty" and allows the defendant "to offer any competent evidence to disprove the alleged [tort]." *Denton v. Arnstein*, 197 Or 28, 46, 250 P2d 407 (1952).

By contrast, affirmative defenses must be "set forth affirmatively" in the responsive pleading. ORCP 19 B. ORCP 19 B explicitly identifies certain defenses as affirmative defenses—*e.g.*, assumption of risk, claim or issue preclusion, comparative or contributory negligence, discharge in bankruptcy, release, fraud, duress, laches, statute of limitations, statute of frauds, unconstitutionality, and waiver—but also contains a catch-all for "any other matter constituting an avoidance or affirmative defense."

A body of case law has developed as to what other matters qualify as affirmative defenses for purposes of ORCP 19 B. As a general principle, "where the defendant desires to present evidence which does not directly controvert a fact necessary to be established by plaintiff, it is a new matter which must be pleaded as an affirmative defense." *Deering*, 281 Or at 613. A "new matter" relies on "facts different from those averred by the plaintiff, and not embraced within the judicial inquiry into their truth." *Hubbard*, 110 Or at 627. For example, in *Deep Photonics Corp. v. LaChapelle*, 368 Or 274, 491 P3d 60 (2021), the most recent Supreme Court case to apply the standard, the defendants in a shareholder derivative action governed by Delaware law sought to put on evidence at trial of an "exculpation provision" in the company's certificate of incorporation, as a means of avoiding liability. *Id.* at 289-90. Delaware law allowed for such a provision, but the plaintiffs asserted that it was an affirmative defense that was waived by not pleading it, and the trial court agreed. *Id.* at 290-91. We affirmed, as did the Supreme Court. *Id.* at 291. The Delaware courts had described such a provision as "in the nature of an affirmative defense," and it was "even clearer under Oregon law"

that it was an affirmative defense. *Id.* at 299-300 (internal quotation marks omitted). The exculpation provision did not "directly controvert a fact necessary to be established by plaintiff" but instead raised a "new matter," so ORCP 19 B required that it be pleaded as an affirmative defense. *Id.* at 299-300 (internal quotation marks omitted).

With those general principles in mind, we next consider the nature of a negligence action under Oregon law, as relevant to what the plaintiff must prove and, by extension, what should be viewed as "controvert[ing] facts necessary to be proved by plaintiff," versus raising "a new matter." *Deering*, 281 Or at 613. The traditional elements of a common-law negligence claim are "that the defendant owed the plaintiff a duty, that the defendant breached that duty, and that the breach was the cause-in-fact of some legally cognizable damage to the plaintiff." *Chapman v. Mayfield*, 358 Or 196, 205, 361 P3d 566 (2015) (internal quotation marks and brackets omitted). However, in Oregon, as a consequence of *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 735 P2d 1326 (1987), rather than the "'duty, breach, cause' sequence [being] routinely recited as the formula for every negligence case," *id.* at 15, the "traditional duty-breach analysis is subsumed in the concept of general foreseeability[,]" *Chapman*, 358 Or at 205.

Thus, under Oregon law, "unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff." *Fazzolari*, 303 Or at 17. Ultimately, "[a] person is negligent if the person fails to exercise reasonable care, a standard that is measured by what a reasonable person of ordinary prudence would, or would not, do in the same or similar circumstances." *Bjorndal v. Weitman*, 344 Or 470, 478, 184 P3d 1115 (2008) (internal quotation marks omitted).

We now turn to the case law. Three decisions of the Oregon Supreme Court are particularly relevant to the issue before us: *Fenton v. Aleshire*, 238 Or 24, 393 P2d 217 (1964);

*van der Hout*, 251 Or 435, decided in 1968; and *Bjorndal*, 344 Or 470, decided in 2008. We discuss each in succession.

In *Fenton*, the defendant struck a young girl with his car, and she died of her injuries. 238 Or at 25-26. Her estate brought an action for wrongful death. *Id.* at 26. At trial, the evidence showed that the accident occurred on a late October evening, when it was dark and raining hard and visibility was poor. *Id.* The defendant testified that he was driving approximately 15 to 20 miles per hour and had just passed an intersection with a public school on one corner "when he saw the [girl], apparently coming from the playground, about four feet from the right side of his car." *Id.* He testified that she was looking the other way and ran right in front of his car, and that he turned right and hit the brakes to try to avoid striking her, but that he struck her. *Id.* At the close of evidence, the trial court instructed the jury as follows on "unavoidable accidents":

> "'Now, the law recognizes that some accidents are unavoidable. An accident may happen and a party may be injured without negligence on the part of any of the parties. If any accident occurs which is unavoidable as far as the parties are concerned, and one in which none of the parties were negligent, then the injured party cannot recover as no negligence has been proved. An unavoidable accident is a happening to which human fault does not contribute; therefore, the defendant may not maintain the defense of unavoidable accident if the failure to use ordinary care has contributed, no matter how slightly, as a proximate cause of the occurrence.'"

*Id.* at 30-31. The jury rendered a verdict for the defendant. *Id.* at 26. The trial court later granted a new trial, on the plaintiff's motion, in part because it believed it had erred (in an unspecified manner) in giving the foregoing instruction. *Id.* at 26-27.

On appeal, the Supreme Court did not address the specific language of the instruction given, but instead focused on the confusing state of the law as to *when* such an instruction should be given. *See id.* at 31-34. The court ultimately concluded that the instruction was more trouble than it was worth, given that it served no actual purpose,

and pronounced that, going forward, it "should not be given in any case." *Id.* at 31. The court explained that an "unavoidable accident" is "an accident which occurred without the negligence of anyone." *Id.* It "is nothing more nor less than an accident which occurs without anyone's fault." *Id.* at 34. As such, separately instructing on unavoidable accidents is unnecessary in a negligence action, as the concept is already encompassed within what the plaintiff must prove. *Id.* Moreover, such an instruction is potentially misleading "because it may be misunderstood by the jury as constituting some sort of separate defense." *Id.* The opinion notes the long line of case law recognizing that unavoidable accident "is not an affirmative defense and need not be pleaded." *Id.* at 31.

*Fenton* adopted the following reasoning from a California Supreme Court opinion to explain how the concept of inevitable accident is already inherent in the negligence standard, such that it is encompassed in what the plaintiff must prove and in a defendant's general denial:

> "'In the modern negligence action the plaintiff must prove that the injury complained of was proximately caused by the defendant's negligence, and the defendant under a general denial may show any circumstance which militates against his negligence or its causal effect. The so-called defense of inevitable accident is nothing more than a denial by the defendant of negligence, or a contention that his negligence, if any, was not the proximate cause of the injury. The statement in the quoted instruction on 'unavoidable or inevitable accident' that these terms 'simply denote an accident that occurred without having been proximately caused by negligence' informs the jury that the question of unavoidability or inevitability of an accident arises only where the plaintiff fails to sustain his burden of proving that the defendant's negligence caused the accident. Since the ordinary instructions on negligence and proximate cause sufficiently show that the plaintiff must sustain his burden of proof on these issues in order to recover, the instruction on unavoidable accident serves no useful purpose.'"

*Id.* at 35-36 (quoting *Butigan v. Yellow Cab Co.*, 49 Cal 2d 652, 658-59, 320 P2d 500, 504 (1958) (internal citation omitted)).

Our Supreme Court described the foregoing reasoning as "in full accord with what this court has said in numerous decisions, and makes unavoidable the conclusion that instructions on unavoidable accidents in negligence cases are without value and may be prejudicial." *Id.* at 36; *see also, e.g.*, *Igo et al. v. Butler et al.*, 199 Or 423, 430, 262 P2d 675 (1953) ("For a defendant to say that an accident was unavoidable is equivalent to saying that it was not caused by his negligence. His plea of unavoidable accident adds nothing whatever to the denial of negligence on his part."); *DeWitt v. Sandy Market, Inc.*, 167 Or 226, 240, 115 P2d 184 (1941) (the defendant's allegation in his answer that running into the plaintiff with his truck was unavoidable by him "would not be an affirmative defense, but merely an argumentative denial of the charge that the defendant was negligent," and it "present[ed] nothing but an issue included in the general denial"); *McVay v. Byars*, 171 Or 449, 458, 138 P2d 210 (1943) ("Saying to the jury * * * that they should find for defendant if they determine that 'the accident was unavoidable so far as the defendant was concerned,' is merely a more involved and clumsier manner of saying that they should find for defendant if they should determine that he had not been negligent in any respect as alleged.").

The next case of significance is *van der Hout*, which has the distinction of being the only Supreme Court case to specifically address sudden medical emergency as a negligence defense. In *van der Hout*, a man named Johnson began pulling his car away from the curb where it was parked, struck a glancing blow to a nearby parked car, proceeded diagonally across the street into opposing traffic at a speed of 35 to 40 miles per hour, jumped the curb, struck a young boy on the sidewalk, and crashed into a store. *van der Hout*, 251 Or at 436-37. Johnson died in an ambulance en route to the hospital, and his autopsy report revealed that he had died of a heart attack. *Id.* at 437.

The young boy struck by Johnson's car brought a negligence action against Johnson's estate. *Id.* at 436. There was evidence that Johnson had been aware for some time that he had heart problems, and the plaintiff also raised the possibility that the heart attack occurred after the accident.

*Id.* at 437. At the close of the evidence, the plaintiff moved for a directed verdict, which the trial court denied. *Id.* Later, in instructing the jury, the court included the following instruction on sudden medical emergencies:

> "I instruct you that one, who while driving an automobile is suddenly overcome by illness, such as a heart attack, or becomes unconscious and thereby loses control of his automobile without having had any reason to believe that he was about to be overcome is not chargeable with negligence.

> "In this connection you must find by a preponderance of the evidence that such sudden illness or loss of consciousness, if there was such, came over the deceased Johnson immediately prior to the occurrence in question and that the deceased Johnson had no reason to believe as a reasonably prudent person that he might experience such a loss of consciousness or sudden illness while operating his automobile."

*Id.* at 437-38. The jury ultimately rendered a verdict for Johnson's estate. *Id.* at 436.

The plaintiff had not objected to the foregoing instruction and in fact had requested a substantially similar instruction himself. *Id.* at 438. Nonetheless, on appeal, he "argued that strict liability should be imposed for violation by Johnson of various provisions of the Motor Vehicle Code." *Id.* The Supreme Court rejected that argument as both unpreserved and inconsistent with *Pozsgai v. Porter*, 249 Or 84, 435 P2d 818 (1967). *Id.* In *Pozsgai*, the court had rejected an argument that the defendant should be deemed "conclusively negligent" for crossing into opposing traffic in violation of the vehicle code, regardless of the reason that he did so. 249 Or at 86. *Pozsgai* also held that the trial court's jury instruction on the issue—which conveyed that the defendant could not be "deemed guilty of negligence" if a "faulty steering apparatus was the sole reason defendant lost control and was on the wrong side of the road, and he was not negligent in relation to the faulty apparatus"—was a correct statement of the law. *Id.* at 88-89.

The *van der Hout* court also rejected the plaintiff's effort to limit the principle to cases of loss of consciousness,

stating that the reasoning for the rule "applies just as strongly to a case of sudden illness which incapacitates the driver of an automobile as to a case of fainting or unconsciousness." 251 Or at 438-39.

Neither party in *van der Hout* appears to have taken issue with the specific wording of the instruction that the trial court had given; rather, the issue on appeal was whether it should have been given at all. Nonetheless, the *van der Hout* court observed at least in general terms that the instructions given "correctly embody the applicable law" as described in *American Law Reports* and a Massachusetts Supreme Court decision. 251 Or at 438-39. Per the former source, "'By the great weight of authority, an operator of a motor vehicle who, while driving, becomes suddenly stricken by a fainting spell or loses consciousness from an unforeseen cause, and is unable to control the vehicle, *is not chargeable with negligence* \*\*\*.'" *Id.* (quoting 28 ALR2d 12, 35 (originally published in 1953)) (emphasis added). Similarly, the latter source states, "'By the great weight of authority a sudden and unforeseeable physical seizure rendering an operator unable to control his motor vehicle *cannot be termed negligence*.'" *Id.* (quoting *Carroll v. Bouley*, 338 Mass 625, 627, 156 NE2d 687, 689 (1959)) (emphasis added).

Thus, *van der Hout* holds that strict liability does not apply to car accidents caused by traffic violations and, further, that someone who experiences an unforeseeable sudden medical emergency while driving cannot be held liable in negligence for a resulting crash. And it recognized that it was for the jury to decide when Johnson had the heart attack (before or after the accident) and whether he "had knowledge of a heart condition such that it would have been negligence for him to drive an automobile at all." *Id.* at 439; *see also, e.g.*, *Whelpley v. Frye, Adm'x*, 199 Or 530, 537, 263 P2d 295 (1953) ("Was Gerald Frye dead or suffering an incapacitating heart attack when his car started its gradual turn to the left side of the road? If so, he could not be found guilty of negligence on that account.").

That brings us to *Bjorndal*. *Bjorndal* involved a negligence action arising from a motor vehicle accident. 344 Or at 472. At the defendant's request, and over the plaintiff's

objection, the trial court gave the uniform civil jury instruction on emergency: "'People who are suddenly placed in a position of peril through no negligence of their own, and who are compelled to act without opportunity for reflection, are not negligent if they make a choice as a reasonably careful person placed in such a position might make, even though they do not make the wisest choice.'" *Id.* at 473. On appeal, plaintiff, along with *amicus curiae* the Oregon Trial Lawyers Association, argued that that instruction should *never* be given in a negligence action, as it is unnecessary and potentially misleading. *Id.* at 474. We deferred on the "never" point to the Supreme Court, which granted review. *Id.* at 473. After tracing the instruction's history, and noting intervening changes to Oregon negligence law, the court agreed with the plaintiff. *Id.* at 475-80. Just as it had announced in *Fenton* that the "unavoidable accident" instruction should no longer be given, the court announced in *Bjorndal* that the "emergency" instruction should no longer be given: "We *** now hold that the emergency instruction, as used in ordinary vehicle negligence cases, is an inaccurate and confusing supplement to the instructions on the law of negligence and, therefore, should not be given." *Id.* at 472.

The court explained that the emergency instruction was unnecessary because its substance was already encompassed by the general negligence instructions that were given. Under Oregon law, "[a] person is negligent if the person fails to exercise reasonable care, a standard that is measured by what a reasonable person of ordinary prudence would, or would not, do in the same or similar circumstances." *Id.* at 478 (internal quotation marks omitted). The uniform instruction on negligence thus stated:

"'The law requires every person to use reasonable care to avoid harming others. Reasonable care is the degree of care and judgment used by reasonably careful people in the management of their own affairs to avoid harming themselves or others.

"'In deciding whether a party used reasonable care, consider the dangers apparent or reasonably foreseeable when the events occurred. Do not judge the party's conduct in light of subsequent events; instead, consider what the party knew or should have known at the time.

> "'A person is negligent, therefore, when that person does some act that a reasonably careful person would not do, or fails to do something that a reasonably careful person would do under similar circumstances.'"

*Id.* at 478 (quoting Uniform Civil Jury Instruction (UCJI) 20.02).

That instruction "focuses on whether a person acted with reasonable care to avoid harm to others, in light of all the circumstances, including any 'emergency.'" *Id.* at 480. It therefore already "encompasses any legitimate concerns about 'emergency' circumstances" and, indeed, "already refers to facts that may create an emergency situation when it speaks of the 'dangers apparent or reasonably foreseeable when the events occurred' and the 'circumstances' that are to be considered in determining whether a person used reasonable care." *Id.* (quoting UCJI 20.02).

The *Bjorndal* court made clear that "[p]arties may of course introduce evidence, and may argue about," claimed "emergencies" and the choices available to a driver in an emergency situation, because "[t]he *existence* of 'emergency' circumstances in vehicle accident cases—sudden actions by other drivers, unexpected weather events, roadway hazards—is indisputably appropriate for a jury to consider in determining whether a person has used reasonable care in attempting to avoid harming others." *Id.* at 479-80 (emphasis in original). But there is no need for any instruction beyond the general negligence instructions, because "the usual instruction on negligence sufficiently covers what a reasonably prudent person would do under all circumstances, including those of sudden emergency." *Id.* at 480.

Based on the reasoning of *Fenton*, *van der Hout*, and *Bjorndal*, as well as the general principles discussed earlier, we conclude that sudden medical emergency is encompassed in a general denial, rather than being an affirmative defense.

Like the "unavoidable accidents" at issue in *Fenton* and the "sudden emergency" circumstances discussed in *Bjorndal*, sudden medical emergencies are simply circumstances that a jury must consider in deciding whether the

plaintiff has proved negligence. *See Bjorndal*, 344 Or at 480 ("[T]he usual instruction on negligence sufficiently covers what a reasonably prudent person would do under all circumstances, including those of sudden emergency."); *Fenton*, 238 Or at 35-36 ("[T]he question of unavoidability or inevitability of an accident arises only where the plaintiff fails to sustain his burden of proving that the defendant's negligence caused the accident[,]" and "the ordinary instructions on negligence and proximate cause sufficiently show that the plaintiff must sustain his burden of proof on these issues in order to recover[.]" (Internal quotation marks omitted.)).[2] It follows that they are covered by a general denial, rather than needing to be affirmatively pleaded. *See Fenton*, 238 Or at 35 (explaining that "the defendant under a general denial may show any circumstance which militates against his negligence or its causal effect," including circumstances giving rise to an unavoidable or inevitable accident not caused by negligence (internal quotation marks omitted)).

In this case, in seeking to present evidence that he suffered a seizure and lost consciousness right before the crash, defendant sought to present evidence that directly controverted a fact that plaintiff was required to establish to prevail on his claim—that defendant failed to act "with reasonable care to avoid harm to others, in light of all the

---

[2] We note that, although the parties do not mention it in their briefing on appeal, we have considered the "act of God" defense to negligence and whether the case law on that defense affects our analysis, and we have concluded that it does not. In 1924, the court summarily stated in *Hubbard*, 110 Or at 626—a negligence action relating to a storage warehouse—that "the freezing of the pipes as an 'act of God' was new matter" that had to be pleaded as an affirmative defense. We have not found any other Oregon cases actually discussing the pleading issue, as distinct from just mentioning "act of God" having been pleaded as an affirmative defense, such as in *Hevel v. Stangier*, 238 Or 44, 46-47, 393 P2d 201 (1964). There is some tension within the Supreme Court case law, insofar as *Rosenwald v. Oregon City Transp. Co.*, 84 Or 15, 24, 163 P 831, *reh'g*, 84 Or 15, 164 P 189 (1917), suggests that "act of God" is a species of "unavoidable accident," and the Supreme Court has long made clear that unavoidable accident is not an affirmative defense, *see, e.g.*, *Fenton*, 238 Or at 31. Any inconsistency in that regard is for another day and, more importantly, for the Supreme Court to resolve. For present purposes, it is sufficient to note that a sudden medical emergency is not an "act of God" as that defense is defined in Oregon. *See Northwestern Mutual Ins. Co. v. Peterson*, 280 Or 773, 776-77, 572 P2d 1023 (1977) ("Act of God" refers to a "natural occurrence of extraordinary and unprecedented proportions" that is "not foreshadowed by the usual course of nature, and whose magnitude and destructiveness could not have been anticipated or provided against by the exercise of ordinary foresight." (Internal quotation marks omitted.)).

circumstances, including any 'emergency.'" *Bjorndal*, 344 Or at 480 (describing negligence); *see also Fenton*, 238 Or at 31 (an "unavoidable accident" is "an accident which occurred without the negligence of anyone"). Evidence of the circumstances in which defendant acted is fundamental to the inquiry into whether he was negligent, rather than being a "new matter." *See Deering*, 281 Or at 613 ("[W]here the defendant desires to present evidence which does not directly controvert a fact necessary to be established by plaintiff, it is a new matter which must be pleaded as an affirmative defense."). It is "embraced within the judicial inquiry into the[] truth" of plaintiff's allegations of negligence. *Hubbard*, 110 Or at 627.

In arguing to the contrary, plaintiff makes various arguments, most of which we have already addressed in our analysis. Only two merit more specific comment—one regarding *van der Hout*, and the other regarding out-of-state case law.

Plaintiff argues that, in *van der Hout*, the Supreme Court approved of the jury instruction given by the trial court in that case, which implicitly put the burden of proof on the defendant, and thereby signed off on sudden medical emergency being an affirmative defense. Defendant counters that the same instruction stated that a person who suffers an unforeseeable medical emergency "is not chargeable with negligence," *van der Hout*, 251 Or at 437-38, which supports the opposite conclusion. In our view, both parties read too much into *van der Hout*. The actual issue in *van der Hout* was whether "strict liability should be imposed for violation by Johnson of various provisions of the Motor Vehicle Code." *Id.* at 438. The Supreme Court held that it should not be and that it was therefore appropriate to instruct the jury on sudden medical emergency.[3]

---

[3] In *Fenton*, 238 Or at 29-30, the Supreme Court announced that trial courts should no longer give the "unavoidable accident" instruction but, with almost no discussion, approved of the "emergency" instruction given in that case—an instruction that was not directly quoted but, in context, appears to have been materially the same as the one given more than 40 years later in *Bjorndal*. In *Bjorndal*, 344 Or at 472, the Supreme Court announced that trial courts should no longer give the "emergency" instruction. Given that history, it seems entirely possible that the Supreme Court might now disapprove of giving a separate instruction on "sudden medical emergency," even though it approved of doing so in *van der Hout*. That is an issue for the Supreme Court in another case, however, as no instruction was given in this case.

As for the substance of the instruction that was given, the parties do not appear to have been concerned with its specific wording—instead arguing over whether it was appropriate to give any instruction—and the Supreme Court similarly seems to have been concerned only with its gist. *See van der Hout*, 251 Or at 438-39. Without discussing specific language, the court simply observed that the trial court's instructions "correctly embod[ied]" the applicable law described in *American Law Reports* and a Massachusetts decision—seemingly referring to the "not chargeable with negligence" aspect of the instruction, given that the court then quoted similar language from its two cited sources. *See id.* (quoting 28 ALR2d 12, 35, which uses the language "not chargeable with negligence," and a Massachusetts decision that uses the language "cannot be termed negligence"). The court's reference to *Pozsgai* is also notable. *Id.* at 438. In *Pozsgai*, 249 Or at 88-89, the court approved of a jury instruction that described the possibility of a mechanical malfunction in the defendant's vehicle as coming within "the standard of the reasonably prudent person" on which the jury was already instructed, directed the jury to determine whether "the defendant acted as a reasonably prudent person would act under the same or similar circumstances," and stated that if the defendant "without any negligence on his part lost control of his automobile by reason of a faulty steering mechanism, then he would not be deemed guilty of negligence."

On the whole, we view *van der Hout* as more in line with defendant's position than plaintiff's—but, ultimately, we do not understand the *van der Hout* court to have intended to comment on how sudden medical emergency should be pleaded or proved, let alone to have made any holding on that issue.

Finally, plaintiffs cite a Nebraska case stating that, as of 1994, "[t]he majority of courts in other jurisdictions" to address the issue had "recognized that a sudden or momentary loss of consciousness while driving is a complete defense to an action based on negligence if such a loss of consciousness was not foreseeable" and, further, that "[t]hese courts generally hold that a loss of consciousness defense

is an affirmative defense and that where \*\*\* the plaintiff has established a *prima facie* case of negligence, the burden of proof shifts to the defendant to establish the loss of consciousness defense." *Storjohn v. Fay*, 246 Neb 454, 459, 519 NW 2d 521 (1994). As to the latter assertion, we have surveyed the out-of-state case law ourselves and found significant variation among jurisdictions, reflective of variations in state law, in addition to there being few cases that actually engage in a substantive analysis of the pleading issue. Nothing we have seen causes us to question our own analysis under Oregon law.

## CONCLUSION

For the reasons discussed, we hold that sudden medical emergency is encompassed in a general denial, rather than being an affirmative defense to negligence. It pertains to the circumstances of the accident itself and thereby goes directly to whether the defendant was negligent. *See Bjorndal*, 344 Or at 478 ("A person is negligent if the person fails to exercise reasonable care, a standard that 'is measured by what a reasonable person of ordinary prudence would, or would not, do in the same or similar circumstances.'"); *id.* at 480 ("[T]he negligence standard focuses on whether a person acted with reasonable care to avoid harm to others, in light of all the circumstances, including any 'emergency.'"). Based on the general denial in his answer, defendant should have been allowed at trial "to offer any competent evidence to disprove the alleged [tort]," including evidence that he had a seizure and lost consciousness and therefore was not negligent in causing the accident. *Denton*, 197 Or at 46; *see also Hubbard*, 110 Or at 627 ("[A]ny fact which goes to destroy, not to avoid, the plaintiff's cause of action, is provable under the general denial." (Internal quotation marks omitted.)). The trial court erred in granting plaintiff's motion *in limine*, which was premised on defendant having failed to plead sudden medical emergency as an affirmative defense.[4]

Reversed and remanded.

---

[4] To be clear, we take no position as to whether, on retrial, the jury should be separately instructed on sudden medical emergency. *See* 343 Or App 445, 462 n 3, (acknowledging a potential issue in that regard).